CHEMICAL NAT. BANK et al. v. MEYER et al.

(District Court, E. D. New York. March 27, 1899.)

**1. BANKRUPTCY—PARTNERS—ACTS OF BANKRUPTCY.**

Where the liquidating partner of an insolvent firm makes a general assignment of the firm's property for the benefit of its creditors, the other partner making no attempt to prevent such assignment, it is an act of bankruptcy, upon which the firm, as such, may be adjudged bankrupt.

**2. SAME.**

Where an act of bankruptcy has been committed by an insolvent partnership, as such, it may be adjudged bankrupt on the petition of its creditors, although neither of the partners has done any act upon which he, as an individual, could be adjudged bankrupt.

**3. SAME.**

Where the liquidating partner of an insolvent firm makes a general assignment of the firm's property for the benefit of its creditors, it is an act of bankruptcy upon which such partner, as an individual, may be adjudged bankrupt, being a conveyance or transfer of a portion of his property with intent to hinder, delay, or defraud his individual creditors.

**4. SAME.**

Where the liquidating partner of an insolvent firm makes a general assignment of the firm's property for the benefit of its creditors, and thereupon an adjudication in bankruptcy is made against such partner and the firm, the other partner, though he made no attempt to prevent the assignment, should not be adjudged bankrupt if he has not individually committed an act of bankruptcy; but he is within the jurisdiction of the court, and is a proper party to the proceedings, and entitled to the rights of a party.

In Bankruptcy. This was a petition in involuntary bankruptcy by the Chemical National Bank and other creditors against the firm of Meyer & Dickinson, and against Henry L. Meyer and Joseph R. Dickinson as surviving partners of said firm.

George C. Kobbe and George H. Yeaman, for petitioning creditors.

Fred. W. Hinrichs, for opposing creditors.

Strong & Cadwalader and G. Woodward Wickersham, for assignee.

Goepel & Raegener, for Henry L. Meyer and partnership of Meyer & Dickinson.

THOMAS, District Judge. In the above matter the court has reached the conclusion that the firm of Meyer & Dickinson was, at the time of the filing of the petition herein, insolvent, as were the individuals Henry L. Meyer and Joseph R. Dickinson, surviving partners of such firm, and that the firm of Meyer & Dickinson committed an act of bankruptcy in making, through the action of Henry L. Meyer, the general assignment alleged in the petition. Meyer, under the power given him as liquidating partner, was competent to make a general assignment of the firm property. In any case, no attempt has been made on the part of the partner Dickinson to prevent the marshaling and distribution of the assets of the firm in such proceeding. If Meyer did not have the literal authority to make a valid assignment of the firm property, then his attempt to do so was tantamount to an attempted transfer or removal of the firm property with the intent to hinder, delay, or defraud the firm creditors, and although Dickinson claims that he did not consent, and refused to consent, to such action, his conduct with reference to the matter amounts to a practical acquiescence; so that, in either case, an act of bankruptcy has been committed as regards the firm. It may be assumed that no act of bankruptcy has been committed on the part of Dickinson as an individual, nor on the part of Henry L. Meyer as an individual, unless the latter's assignment, or attempted assignment, of the firm property for the benefit of creditors, be such. (1) Was such an assignment of the firm property by Meyer an act of bankruptcy by him individually? If so, may the firm be adjudged bankrupt without including Dickinson? (2) If neither partner has committed an act of bankruptcy, may the firm be adjudged bankrupt?

For a proper consideration of these questions, it is necessary to inquire, at the outstart, into the primary nature of a partnership. This is sufficiently stated in the quotation in the brief of one of the counsel for the assignee to the effect that partnerships "do not form a collective whole, which is regarded as distinct from the individuals composing it, nor are they collectively endowed with any capacity of acquiring rights or incurring obligations. The rights and liabilities of a partnership are the rights and liabilities of the partners, and are enforceable by or against them individually." Lindl. Partn. p. 4. The bankruptcy act of 1898, in its definitive section (section 1, subd. 19), states that "'persons' shall include corporations, except where otherwise specified, and officers, partnerships, and women, and when used with reference to the commission of acts which are herein forbidden shall include persons who are participants in the forbidden acts, and the agents, officers, and members of the board of directors or trustees, or other similar con-

92 F.—57

trolling bodies of corporations." Therefore it is urged that a partnership is a "person." Section 4, which has to do with persons "who may become bankrupts," provides that "any person who owes debts, except a corporation, shall be entitled to the benefits of this act as a voluntary bankrupt"; while subdivision (b) of section 4 states that "any natural person" may be adjudged an involuntary bankrupt. Section 5 is specially devoted to partners, and under subdivision (a) it is enacted that "a partnership, during the continuation of the partnership business, or after its dissolution and before the final settlement thereof, may be adjudged a bankrupt." Subdivision (b) of section 5 provides that "the creditors of the partnership shall appoint the trustee," and that "in other respects, so far as possible, the estate shall be administered as herein provided for other estates." Subdivision (c) provides that a "court of bankruptcy which has jurisdiction of one of the partners may have jurisdiction of all the partners and of the administration of the partnership and individual property." Subdivision (d) is to the effect that "the trustee shall keep separate accounts of the partnership property and of the property belonging to the individual partners"; while subdivisions (e) and (f) provide for the order of priority in the marshaling and application of individual and firm assets. Subdivision (g) provides that "the court may permit the proof of claim of the partnership estate against the individual estates, and vice versa." Subdivision (h) provides that, "in the event of one or more but not all of the members of a partnership being adjudged bankrupt, the partnership property shall not be administered in bankruptcy, unless by consent of the partner or partners not adjudged bankrupt; but such partner or partners not adjudged bankrupt shall settle the partnership business as expeditiously as its nature will permit, and account for the interest of the partner or partners adjudged bankrupt." It is considered that subdivision (h) means that in case all the members of a partnership are not adjudged bankrupt, and the partnership itself has not committed an act of bankruptcy, and thereby becomes exposed to such adjudication, the partnership property shall, at the option of the other partner or partners, be administered by them or in bankruptcy. Without stopping to inquire whether the meaning is also suggested that, if all the members of a partnership have been individually adjudged bankrupt, the partnership property may or shall also be administered in bankruptcy, the essential question is reached whether the partnership property may be administered in bankruptcy, although the partnership be insolvent and has committed an act of bankruptcy, but none or less than all the partners, although insolvent individually, have done no act whereby they, as individuals, may be adjudged bankrupt. The result of a negative answer to this question would be that partnerships, although insolvent, and although the partners be individually insolvent, could make an assignment of their property for the benefit of creditors, and yet be beyond the jurisdiction of courts of bankruptcy, and that all the insolvent laws of the states would be in force as regards partnerships, although the firm had committed an act of bankruptcy sufficient to give jurisdiction in the case of other "persons." The

anomaly would result that the insolvency laws of the state would be in force as to the partnership property of persons, who by agreements had brought themselves within the definition of a "partnership" as above given, although, if they made an assignment of their individual property, they and their property would be amenable to the bankruptcy act. If this be so, assignments by partners for the benefit of creditors, under certain conditions, are unimpeachable, and beyond the reach of the federal statute. In such case, what would be the meaning of section 5, subd. (a), that "a partnership * * * may be adjudged a bankrupt"? Of what practical and efficient use is the provision? What ordinary skill cannot evade it, and at pleasure make full use of the insolvency laws of the state? It cannot be for a moment assumed that the statute intended to give such immunity to partnerships, whatever the consequences to which the opposite construction may lead. The precise reading of the statute is that a partnership, which is declared a "person," may be adjudged a bankrupt. It is true that a partnership is but the relation which arises from the agreement of certain persons to combine their property, labor, and skill in business for the purposes of profit, and that it cannot commit an act of bankruptcy unless one or more individuals composing the partnership, acting as a partner, does some act of bankruptcy, which is tantamount to the partnership itself committing the act. It is difficult to conceive of a partnership, although it be regarded as a person, being adjudged bankrupt, unless one or more of the partners be at the same time adjudged bankrupt, as the purpose of the bankruptcy act is not only to distribute the property, but to relieve the debtor. While the discharge of an individual debtor would discharge him from all his property, the discharge of a partner, as such, from partnership debts, so far as the partnership property was concerned, would leave him still liable to the full extent of his individual property, subject to his individual debts, for whatever might remain unpaid of a partnership obligation. Therefore, the mere administration of partnership property would furnish no personal relief whatever to the debtor, and the grand purpose, which is commonly proclaimed to be the spirit and to lie at the foundation of the act, viz. to relieve the debtor class from the burden of obligations impossible for them to discharge, would be unfulfilled. Yet let it be repeated that the plain reading of the statute is that, for the purposes of the act, partnerships are "persons," and that partnerships may be adjudged bankrupt. This seems to illustrate that congress has endowed a partnership with something of the nature of a separate and distinct entity, while in the reason of the thing, in view of a knowledge of what a partnership is, it seems neither practical to give a partnership such personality, nor to administer its affairs without a contemporaneous administration of the estate of at least one of the partners. However, if the statute is to be literally construed, such a contention is defensible, and the decision is to rest upon the words of the statute, whatever other result might be attained by a consideration of the essential principles of law relating to partnerships. The plain language of the statute

wars against its acknowledged object, to discharge debtors, as well as against the essential nature of a partnership.

For the moment coming back to the definition of a "partnership" given above, it will be seen that a partnership has no collective entity; that it acts entirely through individuals, and within the limits of the real or apparent purposes of a partnership. Each partner represents all; hence each partner owns the partnership property in tenancy with his fellow partners, and has an ultimate individual interest therein. This ultimate individual interest is, subject to the firm obligations, applicable to the payment of his individual debts; and when any individual partner commits an act with reference to the firm property, tending to delay or defraud creditors of the firm, the same act also tends ultimately to delay or defraud his individual creditors who have a secondary right in the property, for the relation of the partnership and individual creditors to the partnership property is merely one of marshaling and administering the firm assets; for the firm simply acts through its individual partners, or an individual partner, and the act of the individual partner, as such, if it tends to defraud one class of creditors, in its result tends to defraud another class. Although the bankruptcy act makes an assignment for the benefit of creditors itself an act of bankruptcy, yet such act of assignment is in itself a conveyance or transfer of a portion of his property with intent to hinder, delay, or defraud his creditors, who have claims against him individually, which is an act of bankruptcy, under section 3, subd. 1. This was decided by the circuit court of appeals, Second circuit, in the case of In re Gutwillig, 92 Fed. 337, where it was held that "a voluntary general assignment, with or without preferences, made by an insolvent debtor within the prescribed four months, is fraudulent, and intended by him to 'hinder, delay, and defraud' creditors, within the meaning of the section." It is difficult to see how it could defraud his partnership creditors, unless it also affected his individual creditors. But it is suggested that it could not have been the intention to defraud the individual creditors, for the reason that, if the partnership be insolvent, there would be no surplus remaining to pay the individual debts. There is no evidence whatever before the court that the partnership was insolvent at the time the assignment was made, and, if it were otherwise, the court would not, upon application, wait to determine, by nice investigation, whether the partnership was insolvent at such prior time, where the act itself would indicate a fraudulent intention, even though in final result the individual creditors lost nothing by it, because there was no surplus after payment of their debts. The debtor has attempted to divert property, and the diversion, in legal theory, is equivalent to an attempt to delay and defraud creditors. This matter has received attention, and careful study and presentation, on the part of the several counsel engaged, and it is appreciated by the court that the conclusions in the matter may not be wholly defended by the statute or by principle. It is considered, however, that a suitable respect for the words of the statute, read with permissible regard for the principles

of law concerning the nature of a partnership, constrains the court to hold that jurisdiction of both of the surviving partners has been obtained; that the firm is insolvent, as is each partner thereof; that the firm and Henry L. Meyer, one of the partners, have each committed an act of bankruptcy; and that the firm and Meyer should be adjudged bankrupts accordingly. Joseph R. Dickinson is a proper party to the proceeding, and is entitled to the rights due to a person thus connected with the record.