## LIBERTY NATIONAL BANK OF ROANOKE *v.* BEAR, TRUSTEE.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 218.   Argued October 7, 1927.—Decided February 20, 1928.

1. Under § 5a of the Bankruptcy Act, a partnership may be adjudicated a bankrupt as a separate entity, irrespective of any adjudication of bankruptcy against the partners as individuals.   P. 220.
2. An involuntary petition filed against a partnership, which does not in terms seek an adjudication that the partners are bankrupts, as individuals, nor allege that as individuals they are insolvent or have committed any act of bankruptcy, is not in legal effect a petition against them individually; and an adjudication thereunder of the partnership's bankruptcy is not, in legal effect, an adjudication that the partners are bankrupt individually.   P. 226.
3. Hence, in this case, there was no ground, under § 67c or § 67f of the Act, for annulling judgment liens obtained against the individual real estate of the partners within four months prior to the filing of the involuntary petition against the partnership, but more than eight months prior to filing of their individual voluntary petitions.   P. 226.

18 F. (2d) 281, reversed.

CERTIORARI, 274 U. S. 731, to a decree of the Circuit Court of Appeals, which affirmed an order of the District Court, disallowing the claims of the bank as a secured creditor, based on a judgment lien against the individual estates of partners who filed voluntary petitions in bankruptcy after the partnership had been adjudicated a bankrupt.   See also 285 Fed. 703; 4 F. (2d) 240; and 265 U. S. 365.

*Mr. James D. Johnston* for petitioner.

*Mr. Harvey B. Apperson,* with whom *Mr. James A. Bear* was on the brief, for respondent.

The adjudication of the partnership was in effect an adjudication of the individual members.   *In re Meyer,*

98 Fed. 976; *In re Stokes,* 106 Fed. 312; *Dickas* v. *Barnes,* 140 Fed. 849; Black on Bankruptcy, (1922 Ed.), § 110; *Francis* v. *McNeal,* 228 U. S. 695; *Vaccaro* v. *Security Bank,* 103 Fed. 436; *In re Bretanshaw,* 157 Fed. 363; *Francis* v. *McNeal,* 186 Fed. 481; Pomeroy, Eq. Juris. (4th Ed.), §§ 2371, 2372.

The assets of the individual, being drawn into bankruptcy by the bankruptcy of the firm, will be administered as the Act requires. *Miller* v. *New Orleans Acid Co.,* 221 U. S. 496.

If the claimant is allowed to recover from the proceeds of sale of the individual estates every dollar of a debt which is in fact a partnership debt, there will be no equitable marshalling of the several estates, but in fact a most inequitable hardship will be imposed upon the other individual creditors of the individual partners. Sections 67c and 67f are to be considered and construed in connection with the other provisions of the Bankruptcy Act. The Trustee represents all four estates.

*Meek* v. *Centre County Banking Co.,* 268 U. S. 426, and *Myers* v. *International Trust Co.,* 273 U. S. 380, distinguished.

MR. JUSTICE SANFORD delivered the opinion of the Court.

This is the bankruptcy proceeding which was before us at an earlier stage in *Liberty Natl. Bank* v. *Bear,* 265 U. S. 365.

In July, 1920, the Liberty National Bank brought suit in a Virginia court against the Roanoke Provision Company, a partnership composed of W. L. Becker, Sr., and W. L. Becker, Jr., and against the Beckers individually, and in the same month recovered a judgment against the Provision Company and the two Beckers individually, which being duly docketed, became, under the laws of Virginia,

a lien upon the real estate of the judgment debtors.[1]   In August an involuntary petition in bankruptcy was filed in the Federal District Court against the Provision Company, as a partnership composed of the two Beckers; alleging that it had committed an act of bankruptcy by executing a general assignment for the benefit of creditors, and was insolvent.   There was no allegation that the Beckers were individually insolvent, or had executed general assignments of their individual properties or committed any acts of bankruptcy; and there was no prayer that they be adjudged bankrupt individually.   They filed a joint answer admitting the allegations of the petition; and the Company, as a partnership composed of the two Beckers, was adjudged a bankrupt by the District Judge, but without adjudging the bankruptcy of the Beckers as individuals.

In April, 1921—more than eight months after the partnership had been adjudged a bankrupt—the Beckers filed separate voluntary petitions in bankruptcy; and each was adjudged a bankrupt.   The respondent Bear was then elected trustee for the partnership estate by the partnership creditors, and trustee for the individual estates by the individual creditors.

Thereafter the Bank filed proofs of claim on the judgment against the separate estates of the Beckers, alleging that it constituted a lien upon their individual real estate and was entitled to priority as such.   The trustee filed objections on the ground that he had been vested with title to the property of the individual partners, as well as that of the partnership, as of the date of the filing of the petition in bankruptcy against the Company in August, 1920; and contended that as the judgment had been recovered within four months prior to the filing of that petition, the lien upon the individual properties was annulled by

---

[1] Code of 1919, §§ 6470, 6471.

§ 67f of the Bankruptcy Act.[2]   The referee disallowed the claims of the Bank as secured claims, and allowed them as unsecured claims merely.[3]   This order was reversed by the District Judge, on the ground that as the order adjudging the bankruptcy of the Company had not adjudged the bankruptcy of the Beckers individually, the lien of the judgment upon their individual properties had not been nullified.   The Circuit Court of Appeals reversed this decree upon the ground that the " adjudication of the partnership was necessarily an adjudication of the bankruptcy of the individuals composing it, and that . . . the lien of a judgment obtained within four months of the filing of the petition against the partnership was lost by the adjudication."   285 Fed. 703.   This Court—without determining whether the adjudication of the bankruptcy of the Company operated as an adjudication of the bankruptcy of the Beckers individually—held that as there was no pleading or proof as to the insolvency of the Beckers when the Bank recovered its judgment, there was no ground under § 67f of the Bankruptcy Act for annulling the lien thereby acquired upon their individual properties, and reversed the decree of the Circuit Court of Appeals and remanded the cause to the District Court for further proceedings not inconsistent with the opinion.   *Liberty Natl. Bank* v. *Bear, supra,* 368.

The trustee, by leave of the District Court, then amended his objections to the claims of the Bank by alleging that the Beckers were insolvent when the judgment was recovered, and that if enforced as a secured claim against the individual estates the judgment would result

---

[2] 30 Stat. 544, c. 541; U. S. C., Tit. 11.

[3] The referee at the same time disallowed another claim of the Bank to a lien upon the real real estate of the partnership; but no steps were taken by the Bank to review his order in this respect; and no question as to this matter is here involved.

in preferences; [4] and contended that the lien upon the individual properties was also annulled by § 67c of the Bankruptcy Act.  It was then stipulated that the Beckers were insolvent when the judgment was obtained, and that the enforcement of the judgment as a secured claim against the individual properties would enable the Bank to obtain a greater percentage of its debt from such assets than other individual creditors,—there being no surplus from individual assets to be applied to partnership debts, and none from partnership assets to be applied to individual debts.   The referee again disallowed the claims of the Bank as secured claims against the individual estates of the Beckers.   This was affirmed by the District Court, without opinion, and by the Circuit Court of Appeals, which adhered to its original ruling as to the effect of the order adjudicating the bankruptcy of the partnership.   18 F. (2d.) 281.

The controversy here is solely between the Bank and the trustee as the representative of the other individual creditors of the Beckers; the partnership creditors having no interest therein as there is no surplus of the individual estates to be applied to partnership debts.

The trustee relies upon both §§ 67c and 67f of the Bankruptcy Act.   Sec. 67c provides that: "A lien created by or obtained in or pursuant to any suit . . which was *begun against a person within four months before the filing of a petition in bankruptcy by or against such person* shall be dissolved by the adjudication of such person to be a bankrupt if . . it appears that said lien was obtained and permitted while the defendant was insolvent and that its existence and enforcement will work a preference . . ."   Sec. 67f provides: " That all levies, judg-

---

[4] This was affirmed by the Circuit Court of Appeals on an interlocutory appeal.  4 F. (2d) 240.

ments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, *at any time within four months prior to the filing of a petition in bankruptcy against him,*[5] shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the . . lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt . . ."

It is indisputable that under these provisions the judgment liens upon the real estate of the Beckers cannot be annulled unless they were adjudged bankrupts under petitions in bankruptcy filed within four months after the suit against them was commenced, § 67c, or the judgment liens obtained, § 67f. This being unquestioned, the trustee does not claim that the liens were annulled under the voluntary petitions of the Beckers which were filed after the expiration of the prescribed periods. His sole contention is that they were annulled by the proceedings under the involuntary petition filed against the Provision Company within such periods. As to this he insists that—although the petition was filed against the partnership alone and the partnership alone was adjudged a bankrupt—the petition was, in effect, a petition against the individual partners, as well as the partnership, and the adjudication was, in effect, an adjudication that the individual partners as well as the partnership were bankrupts; that is, that the adjudication that the partnership was a bankrupt necessarily imported an adjudication that the individual partners were also bankrupts.

This contention disregards entirely the principle established by the Bankruptcy Act that a partnership may be adjudged a bankrupt as a separate entity without refer-

---

[5] The phrase "A person against whom a petition has been filed" as defined by § 1 (1) of the Bankruptcy Act, includes " a person who has filed a voluntary petition."

ence to the bankruptcy of the partners as individuals.
In this respect the Act makes a complete change from
the earlier Bankrupt Law of 1867, which did not permit
the partnership entity to be adjudged a bankrupt, but
merely provided that when two or more persons who were
partners in trade were adjudged bankrupt, the property
of the partnership, as well as that of the partners, should
be taken over by the bankruptcy court for administra-
tion.[6] The present Act not only omits this provision of
the Law of 1867, but—after providing generally that the
word "persons" when used in the Act shall include
"partnerships," § 1 (19), and that a petition in bankruptcy
may be filed against a "person" who is insolvent and
has committed an act of bankruptcy, § 3 (b)—specifically
declares in § 5a that: "A partnership, during the con-
tinuation of the partnership business, or after its disso-
lution and before the final settlement thereof, may be
adjudged a bankrupt."[7] Under this provision, as was

---

[6] 14 Stat. 517, c. 176, § 36; R. S. § 5121.

[7] Sec. 5 of the present Act, which was substituted for § 36 of the
Law of 1867, reads as follows:

"Sec. 5. PARTNERS—a A partnership, during the continuation of
the partnership business, or after its dissolution and before the final
settlement thereof, may be adjudged a bankrupt.

"b The creditors of the partnership shall appoint the trustee; in
other respects so far as possible the estate shall be administered as
herein provided for other estates.

"c The court of bankruptcy which has jurisdiction of one of the
partners may have jurisdiction of all the partners and of the adminis-
tration of the partnership and individual property.

"d The trustee shall keep separate accounts of the partnership
property and of the property belonging to the individual partners.

"e The expenses shall be paid from the partnership property and
the individual property in such proportions as the court shall
determine.

"f The net proceeds of the partnership property shall be appro-
priated to the payment of the partnership debts, and the net proceeds

said in *Meek* v. *Centre County Banking Co.*, 268 U. S. 426, 431, there " can be no doubt that a partnership may be adjudged a bankrupt as a distinct legal entity." And if proceeded against as a distinct legal entity, without reference to the individual partners, it may, as such, under § 12a, offer terms of composition to the partnership creditors alone. *Myers* v. *Internat. Trust Co.*, 273 U. S. 380, 383.

It has long been the established rule in the Circuit Courts of Appeals and District Courts that under § 5a of the Act a partnership may be adjudged a bankrupt as a separate entity, under a voluntary or involuntary petition, irrespective of any adjudication of bankruptcy against the individual partners. *In re Meyer* (C. C. A.), 98 Fed. 976, 979, affirming *Chemical National Bank* v. *Meyer* (D. C.), 92 Fed. 896, 901; *In re Mercur* (C. C. A.), 122 Fed. 384, 387, affirming *In re Mercur* (D. C.), 116

---

of the individual estate of each partner to the payment of his individual debts. Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be added to the assets of the individual partners in the proportion of their respective interests in the partnership.

" g The court may permit the proof of the claim of the partnership estate against the individual estates, and vice versa, and may marshal the assets of the partnership estate and individual estates so as to prevent preferences and secure the equitable distribution of the property of the several estates.

" h In the event of one or more but not all of the members of a partnership being adjudged bankrupt, the partnership property shall not be administered in bankruptcy, unless by consent of the partner or partners not adjudged bankrupt; but such partner or partners not adjudged bankrupt shall settle the partnership business as expeditiously as its nature will permit, and account for the interest of the partner or partners adjudged bankrupt."

Fed. 655, 658; *In re Stein & Co.* (C. C. A.), 127 Fed. 547, 549; *Dickas* v. *Barnes* (C. C. A.), 140 Fed. 849, 851; *In re Bertenshaw* (C. C. A.), 157 Fed. 363, 368; *Mills* v. *Fisher & Co.* (C. C. A.), 159 Fed. 897, 899; *Francis* v. *McNeal* (C. C. A.), 186 Fed. 481, 483; *In re Samuels* (C. C. A.), 215 Fed. 845, 847; *Armstrong* v. *Fisher* (C. C. A.), 224 Fed. 97, 99; *Carter* v. *Whisler* (C. C. A.), 275 Fed. 743, 746; *In re Dunnigan* (D. C.), 95 Fed. 428, 429; *In re Duguid* (D. C.), 100 Fed. 274, 278; *In re Barden* (D. C.), 101 Fed. 553, 555; *Strause* v. *Hooper* (D. C.), 105 Fed. 590, 592; *In re Stokes* (D. C.), 106 Fed. 312, 313; *In re Hale* (D. C.), 107 Fed. 432, 433; *In re Farley* (D. C.), 115 Fed. 359, 360; *In re Pincus* (D. C.), 147 Fed. 621, 625; *In re Solomon & Carvel* (D. C.), 163 Fed. 140, 141; *In re Everybody's G. & M. Market* (D. C.), 173 Fed. 492, 493; *In re Lattimer* (D. C.), 174 Fed. 824, 826; *In re Perlhefter* (D. C.), 177 Fed. 299, 305; *In re Lenoir-Cross & Co.* (D. C.), 226 Fed. 227, 229.[8]  This rule has been applied not only where the petition in bankruptcy sought merely the adjudication of the partnership as a bankrupt, but where the adjudication of the individual partners was also sought.  Thus in some cases the partnership was adjudged a bankrupt, although the court refused to adjudge the bankruptcy of the individual partners, either because they had not committed individual acts of bankruptcy, or because, being wage earners or tillers of the soil, they were exempt from

---

[8]And even in *Re Forbes* (D. C.), 128 Fed. 137, 139, in which the District Court for Massachusetts held that there could be no bankruptcy of a partnership without the bankruptcy of all the partners, it was recognized that this would not apply in " exceptional cases such as *In re Dunnigan* (D. C.), 95 Fed. 428," *supra,* in which it had been held, in the same district, that a partnership might be adjudged a bankrupt although one partner, being a minor, could not be so adjudged.

involuntary bankruptcy, or because they were insane, or minors.[9]

This rule, often announced, is based upon the plain words of the Bankruptcy Act. The specific provision in § 5a that a partnership—a person within the meaning of the Act—" may be adjudged a bankrupt," distinctly implies that it may be adjudged a bankrupt as a separate entity without reference to the bankruptcy of the individual partners. This implication is strengthened by the fact that there is no requirement in § 5 that the partners shall be joined as defendants in a petition filed against the partnership, and no provision that the partners shall be adjudged to be bankrupts under such a petition or that such individual adjudications shall be a prerequisite to the adjudication of the bankruptcy of the partnership; as well as by the fact that while § 5 of the Act incorporated most of the administrative provisions in the corresponding section of the Bankrupt Law of 1867, it omitted the provision for granting discharges to the individual partners. That is, the adjudication of the bankruptcy of the individual partners was left solely to the general provisions of the Act, under which no person could be adjudged a bankrupt in involuntary bankruptcy unless he was not only insolvent but had committed an act of bankruptcy, and not even then if he were a wage earner or tiller of the soil, § 3a, b; § 4b.

We cannot believe that Congress intended to limit and weaken the broad provision of § 5a permitting a partnership to be adjudged a bankrupt, by making it essential to

---

[9] Neither of two incidental questions upon which the lower federal courts have differed in opinion—whether a partnership can be deemed insolvent as an entity when the individual partners are solvent, and whether a bankruptcy court which has adjudged a partnership a bankrupt may take possession of the individual property of a partner who has not been adjudged a bankrupt so far as is necessary to pay the partnership debts—is here involved.

such an adjudication that the partners should also be adjudged bankrupt individually. So to hold would make it impossible, in an involuntary proceeding, to adjudge bankrupt a partnership as a separate entity, although it was insolvent and had committed an act of bankruptcy, if any of the partners could not be adjudged a bankrupt because he had not committed an individual act of bankruptcy or was a person exempt from such an adjudication, or for other adequate reason.[10]

The conclusion stated is not in conflict with the decision in *Francis* v. *McNeal*, 228 U. S. 695, upon which the trustee relies. That decision, as we have heretofore pointed out in *Liberty Natl. Bank* v. *Bear, supra,* 368, and *Meek* v. *Centre County Banking Co., supra,* 432, did not involve the question whether an adjudication of the bankruptcy of a partnership involved the adjudication of the bankruptcy of the partners, but merely involved the question whether a bankruptcy court in which an insolvent partnership had been adjudged a bankrupt might under the administrative provisions of § 5 require a partner who had not been adjudged a bankrupt to surrender his individual property to the trustee of the partnership estate for the purpose of paying the partnership debts. There was no claim or suggestion that the adjudication of the bankruptcy of the partnership had involved an adjudication of the bankruptcy of the partner as an individual, or that under that adjudication he could be deemed a bankrupt individually or a trustee could be appointed of his individual estate for the purpose of administering it as that of a bankrupt.

---

[10]As was said by the late Judge Hough, § 5a "sympathetically interpreted secures to the creditor a prompt seizure of firm assets,— without regard to dead, insane, absent, dormant or secret partners, who as experience shows are commonly used by the active members to harass and obstruct those holding just demands against the firm." 8 Columb. Law Rev. 599, 604

We conclude that the involuntary petition filed against the Provision Company, which did not in terms seek an adjudication that the Beckers were bankrupts as individuals, nor allege that as individuals they were insolvent or had committed any acts of bankruptcy, was not in legal effect a petition filed against them individually, and the adjudication under that petition that the partnership was a bankrupt, was not in legal effect an adjudication that they were bankrupts individually. There is hence no ground, under either § 67c or § 67f of the Act, for annulling the judgment liens obtained upon their individual real estate more than eight months prior to the filing of their voluntary petitions.

*Reversed.*