HORTENSIA PIERLUISI GRAU, Plaintiff and Appellee, *v.* MANUEL MONLLOR ET AL., Defendants and Appellants.

No. 4501. Argued June 18, 1929.—Decided March 20, 1931.

8

*Tous Soto & Zapater* for appellants.   *R. Atiles Moreu* and *Guillermo Pierluisi* for appellee.

Mr. Justice Aldrey delivered the opinion of the Court.

Hortensia Pierluisi Grau filed in the District Court of Ponce, in January, 1927, a sworn complaint in an action of debt against Manuel Monllor, Ana Gómez, and Tomás Monllor, in which she substantially alleged that on June 30, 1914, and

both before and after that date, the defendants were the members of a commercial partnership trading under the name of Monllor & Co., of which the managing partners were Manuel Monllor and Ana Gómez, the latter doing business with the consent of her husband Tomás Monllor, who was attorney in fact of the partnership; that on and before the said date, the partnership in question owed to the plaintiff the sum of $1,500 as the amount of a loan bearing interest at 10 per cent annually which originated in an assignment to the said partnership of a mortgage owned by the plaintiff; that accordingly on June 30, 1914, the said partnership, through Tomás Monllor as its attorney in fact, subscribed and delivered a promissory note in which it promised to pay to the order of Hortensia Pierluisi, in Ponce, on June 30, 1917, the sum of $1,500, for value received and bearing interest at the rate of 10 per cent payable annually; that the said obligation is past-due and has not been paid either wholly or partially nor the interest thereon amounting to $1,875 up to the date of the filing of the complaint; that the firm of Monllor & Co. has wound up its affairs and ceased to do any business and does not exist at present as such partnership; that it has no property with which to pay either the principal or the interest due, and that the said debt was contracted during the marriage between Tomás Monllor and Ana Gómez, between whom there existed and stills exists a conjugal partnership owning sufficient property with which to pay the principal and interest sought to be recovered and which includes the house described in the complaint. On the above allegations, it was prayed that the three defendants be adjudged to pay, jointly and severally, the principal and the interest due or to become due. The defendants opposed the claim and pleaded certain defenses; but, after a trial, judgment was rendered against them, who were adjudged to pay *in solido* the sums claimed. The present appeal has been taken by them from that judgment.

The first ground of appeal refers to the general demurrer to the complaint for lack of facts sufficient to constitute a

cause of action against all the defendants; and the second and third grounds relate to the contention that no cause of action is stated as against Tomás Monllor and the conjugal partnership existing between him and Ana Gómez.

The appellants maintain that the complaint is not sufficient because of the failure to allege therein that no discussion (*excusión*) had been effected as to the conjugal property; that it fails to state the extent and the terms of the power of attorney held by Tomás Monllor so that the court might determine whether it was sufficient to bind the partnership for which he subscribed the promissory note; that if the obligation arose from the assignment of a mortgage, it should have been alleged that the partnership collected the mortgage, and that it is not alleged whether Ana Gómez was a general partner, a managing partner not being the same as a general partner.

According to section 127 of the Code of Commerce, all the members of a general copartnership, whether they are managing partners or not, are personally and severally liable with all their property for the results of the transactions consummated in the name and for the account of the partnership, under the signature of the latter, and by a person authorized to make use thereof; and although section 237 provides that the private property of the general partners which is not included in the assets of the copartnership when it is established can not be seized for the payment of the obligations contracted by the copartnership until after the common assets have been attached, such previous discussion, however, is unnecessary where the debtor partnership owns no property, as was held in *Successors of M. Lamadrid & Co.* v. *Martorell*, 27 P.R.R. 551, and the cases cited therein. Therefore, as it is alleged in the complaint in the instant case that the partnership which assumed the obligation sued on exists no longer, having wound up its business, and that it has no property with which to pay its debts, the complaint states a cause of action as against the partners of the firm individually.

It is alleged in the complaint that the firm subscribed, through Tomás Monllor as its attorney in fact, the promissory note of which payment is demanded. Such allegation is sufficient without the necessity of expressing the terms and scope of the power of attorney, in accordance with the principle of law embodied in the maxim *"qui facit per alium facit per se,"* that being a matter of proof.

Nor is the complaint insufficient because it fails to state that the mortgage which gave rise to the obligation sought to be enforced in the case at bar had not been collected, because if it has not been possible to collect the same through causes imputable to the assignor thereof, that would be a matter of defense not incumbent upon the plaintiff.

The appellants also contend that the complaint fails to allege that Ana Gómez was a general partner and that a managing partner is not the same as a general partner. In the case at bar it is immaterial whether the said lady was a managing or a general partner, because as it is alleged that Monllor & Co. was a general copartnership, that is sufficient reason for all its members, whether they were managing partners or not, to be answerable personally and jointly for the result of the firm's business transactions in accordance with section 127, *supra.*

The second error assigned relates to the failure to allege a cause of action against Tomás Monllor, the husband of Ana Gómez.

Although said Tomás Monllor did not bind himself personally, however, as his wife was in business with his consent, he can be sued in this action as the legal representative of the conjugal partnership, since the community property is liable for the debts contracted by his wife as a member of the mercantile partnership, as provided by section 10 of the Code of Commerce, and because section 1323 of the Civil Code prescribes that the conjugal partnership shall be liable for all debts and obligations contracted during the marriage by the husband, and also for those contracted by the wife in

the cases in which she can legally bind the partnership. One of such cases is that provided for in said section 10 of the Code of Commerce.

In view of the foregoing, the assignment of error predicated on the claim that no judgment may be rendered against Tomás Monllor can not be sustained, since, as we have stated before, the conjugal property is liable for the debts contracted by his wife as a member of Monllor & Co. Perhaps, as the appellants say, he might have been dispensed with as a party to this action and conjugal property could have been attached in execution of the judgment against his wife; but we fail to perceive how he was prejudiced by being made a party to this suit, wherein as a party he might contest the liability of the conjugal property for the debts incurred by his wife in a mercantile business, and similarly as to the existence of the debt sued on. However, as he has been adjudged to pay *in solido* the sums claimed in the complaint and since he is not liable to the plaintiff except in regard to the property of the conjugal partnership, the judgment must be modified so as to make him answerable only as regards such property.

The fourth error assigned is that the action prosecuted by the appellee is barred. This was one of the defenses pleaded by the defendants relying on section 950 of the Code of Commerce, which provides a limitation period of three years for the enforcement of promissory notes payable to order, and on the case of *Barros* v. *Padial,* 35 P.R.R. 237.

The complaint was filed long after the lapse of three years, counted from the date on which the promissory note became due. Therefore, the question is whether, notwithstanding the making of the promissory note to order, the instrument is not mercantile in character as it does not arise from a commercial transaction, the limitation period being then fifteen years, pursuant to section 1865 of the Civil Code in connection with section 943 of the Code of Commerce.

In the case of *Barros* v. *Padial, supra,* this Court declared

that in many of our decisions cited therein it had been held that a promissory note drawn to order has presumptively a mercantile character. Although the adverb *presumptively* appears in the English text of the opinion delivered by Mr. Justice Wolf, it is absent in the Spanish translation thereof where it should have appeared. In that opinion it is also stated that to hold otherwise would interfere with the rule of *stare decisis* or something similar; that the decision of the Supreme Court of Spain of 1904 and the Philippine decisions, whether they may be distinguished or not, can not change the rule firmly laid down by this Court and with which we are still entirely in harmony; that the presumptive commercial character of a note drawn to order is a universal one, applicable to all promissory notes; that the method of Euler's circles is applicable, where one of the circles represents the field of commercial transactions and the other represents the field of loans, and their intersection represents that part of the territory common to both kinds of transactions; that, given the universality of a presumption, the party must show that the loan falls in that part of the loan circle that is not common to both; that where a presumption exists, the person seeking to overcome it must exclude every possibility, and probabilities can not avail him, citation then being made of section 311 of the Code of Commerce, which characterizes as mercantile the loans contracted under certain conditions; and that the burden to show the contrary is not removed by showing that loans generally or frequently are not endowed with a commercial character. The opinion then goes on to say: "If a note to order is given the party drawing it may be said to have converted a simple loan into a commercial transaction. In that case promissory notes to order would fall entirely in the field of commercial transactions. Indeed given the general trend of the statutes quoted, we are inclined to think that in Puerto Rico to give a note drawn to order is in itself to constitute a commercial transaction."

The gravamen of that opinion is that promissory notes drawn to order are presumptively mercantile, except where otherwise shown; but as at the end of the opinion it is stated, although not unqualifiedly, that "if a note is given, the party drawing it may be said to have converted a simple loan into a commercial transaction" and that "we are inclined to think that in Puerto Rico to give a note drawn to order is in itself to constitute a commercial transaction," it becomes necessary for us to determine clearly and finally whether promissory notes drawn to order continue to be presumptively commercial or whether they are absolutely commercial, and hence no evidence is admissible to contradict their mercantile character.

According to section 532 of the Code of Commerce, bills or promissory notes payable to order, which arise from commercial transactions, shall produce the same obligations and effects as bills of exchange, except with regard to acceptance, which is a quality pertaining to the latter only. *A contrari sensu,* promissory notes drawn to order not arising from commercial transactions shall not produce the same obligations and effects as bills of exchange, which are mercantile instruments, and hence it may be shown that they do not arise from such transactions, thus depriving them of the character or presumption of being commercial promissory notes, as they do not produce the obligations or effects of bills of exchange. This is why the Supreme Court of Spain said in its judgment of November 25, 1898. that—

"The commercial character of promissory notes payable to order is not established by the mere status as merchants of the persons concerned therewith as drawers, indorsers, or holders, but by the essential fact that they arise from commercial transactions . . ."

It was further said that where it does not appear that the instruments arise from commercial transactions, "it is clear that they can only be considered as expressing the obligation to return a loan with the interest agreed upon, which loan

can neither be regarded as a commercial transaction." In its judgment of October 11, 1918, the same Court declared that—

". . . for a promissory note to have the character of a commercial instrument it is not enough that it fulfills the conditions prescribed by section 571 of the former Code of Commerce, equivalent to section 531 of the present Code, but it is necessary that it should arise from a commercial transaction, as was required by section 558 of the Code of 1829 and is prescribed by subdivision 7 of said section 531; a fact which does not appear from the promissory note involved, because even though it contains the words 'value received,' this does not bring it within the purview of section 532 so as to produce the effects set forth therein . . ."

Section 531 referred to in that judgment is identical with the section bearing the same number in our Code and refers to the requirements of a promissory note drawn to order, the seventh of which is that the instrument must set forth the origin and kind of value represented thereby. Section 532 cited by us is exactly the same as section 532 of the Spanish Code of Commerce. Prior to the above two judgments, or on November 24, 1894, the same Court had already declared that promissory notes payable to order are not necessarily those the proceeds of which are to be used in business but those arising from commercial transactions, as the latter are the only ones legally to be considered as commercial instruments. The said Court, in its judgment of January 25, 1898, made the following ruling: "The issuance of promissory notes to order and their indorsement should be considered as mercantile acts in accordance with section 2 of the Code of Commerce, as they are among those expressly so defined by that code; hence such instruments are presumed to proceed from commercial transactions, unless the contrary is shown."

Therefore, according to our Code of Commerce—which in this respect is identical with the Spanish Code—the jurisprudence laid down by the Supreme Court of Spain, and the repeated decisions of this Court, promissory notes drawn to

order are subject to the presumption *juris tantum* that they are mercantile in character, unless it is shown that they do not arise from commercial transactions. Consequently, the act of subscribing a promissory note payable to order does not turn a simple loan into a mercantile one, nor does it constitute in itself a commercial transaction, as our statute provides that those loans are mercantile which arise from commercial transactions. The same doctrine is maintained by the commentators. In his work, *"Jurisprudencia Mercantil,"* vol. 2, p. 235, Mr. Estasen says, as quoted by the appellees in their brief, that "the bills and promissory notes which, according to section 532 of the Code of Commerce, have the same force and effect as bills of exchange, are not necessarily those the proceeds of which are to be employed in mercantile transactions but those arising from commercial transactions"; and on page 236 he further says: "The commercial character of promissory notes drawn to order is not established by the mere condition as merchants of the persons interested in them as drawers, indorsers, or holders, but by the essential fact that they arise from commercial transactions."

The foregoing propositions having been settled, let us see whether it has been shown that the promissory note herein does not arise from commercial transactions.

It was alleged in the complaint that said promissory note originated in a loan for $1,500 made to the firm of Monllor & Co. by reason of the assignment to the said firm of a mortgage credit for the same amount owned by the plaintiff, which allegation was admitted in the answer to the complaint. It was shown at the trial that one of the partners of Monllor & Co. sought and obtained from the plaintiff the assignment to him of said mortgage credit in order to transfer it to another person in partial payment of the purchase price of a house, and that he subscribed the promissory note as for value received in the said sum. In *Salgado* v. *Villamil et al.,* 14 P.R.R. 437, this Court, after stating that it had on

former occasions held that notes payable to order are presumptively commercial, reached the conclusion that the promissory notes involved in that case were not commercial, because they derived from the sale of hereditary rights and claims which could in no way be considered as similar to the mercantile acts mentioned in the Code of Commerce, as that character can only be attributed to a purchase or a sale, if the parties thereto have the intention of obtaining a profit. A like situation exists as regards the loan evidenced by the promissory note in the instant case, where the note was executed in order to make the mortgage credit available for transfer in part payment of the purchase price of a house, without any showing that this was done for profit.

For the foregoing reasons, the fourth and fifth grounds of appeal can not be sustained.

The sixth and seventh assignments of error can be considered and decided together, as they relate to the same matter. In the first of these two assignments error is claimed in that the lower court failed to hold that the obligation sought to be enforced had become extinguished by the mere fact of the bankruptcy of the firm of Monllor & Co. and by the subsequent discharge of all its debts; and in the second assignment error is charged for the failure to hold that the debt claimed had been included in the list of creditors filed by the said partnership in the bankruptcy proceedings.

As regards the former of these two objections, it is sufficient for us to state that the adjudication in bankruptcy was sought and decreed as to the partnership Monllor & Co. and not as to any of its members individually. According to a recent decision of the Supreme Court of the United States, rendered on February 20, 1928, in the case of *Liberty National Bank* v. *Bear*, 276 U.S. 215, an involuntary petition filed against a partnership, which does not in terms seek an adjudication that the partners are bankrupts, as individuals, nor allege that as individuals they are insolvent or have committed any act of bankruptcy, is not in legal effect a petition against

them individually; and an adjudication thereunder of the partnership's bankruptcy is not, in legal effect, an adjudication that the partners are bankrupt individually. Hence, there is no basis for the contention of the appellants that the adjudication in bankruptcy of Monllor & Co. and its discharge from its debts was the adjudication and discharge of the partners individually, and that therefore the latter are not bound individually to pay the claim made in the present action.

In regard to the other point urged by the appellants, we will say that, although it is a fact that in the list of creditors filed by Monllor & Co. in connection with said bankruptcy proceedings, Guillermo Pierluisi appeared as a creditor in the sum of $1,500, that list did not include the name of Hortensia Pierluisi, who is the plaintiff creditor and whose attorney in fact was not Guillermo Pierluisi but Simón Pierluisi. But even conceding that the claim of Hortensia Pierluisi was the one included under the name of Guillermo Pierluisi, it always results that it has not been proven that her residence was shown or that she was notified or had actual knowledge of the bankruptcy proceedings, as required by subdivision 8 of section 7 of the Banktruptcy Act, and by subdivision 3 of section 17 of the same act, which sections were applied in *Roig* v. *Barletta et al.*, 28 P.R.R. 561. It was sought to prove by the testimony of Enrique Monllor that the $1,500 claim scheduled in the name of Guillermo Pierluisi in the bankruptcy proceedings of the firm was actually the claim of Hortensia Pierluisi, and that her attorney had notice of said proceedings. But even granting the truth of such testimony, the fact still remains that, if the partnership was released from its debts to Hortensia Pierluisi, the same is not true as regards the individual partners, since they had not been adjudicated bankrupts, individually. In any event, there exists here a decisive circumstance, namely, that the obligation sought to be enforced in this action was acknowledged by the partnership after the adjudication in bankruptcy. In the letters from Tomás Monllor, attorney in fact of the part-

nership, to Simón Pierluisi, dated January 19, 1915, May 22, 1915, and March 16, 1916, respectively, the following appears:

"Mr. Simón Pierluisi. My dear friend: I received your favor and, after reading its contents, I reply as follows in regard to the matter between us. We had not advised you because we were expecting to make an arrangement with our creditors, but in view of the fact that nothing could be done we took the firm into bankruptcy so as to prevent the attaching parties from securing any advantage. In regard to what you say about the claim of your sister, we are willing to pay her the bills at maturity even if it takes our last cent, as we can not permit your being embarassed after having served us gratuitously in this matter. We will continue in other businesses . . ."

"Mr. Simón Pierluisi. Porvenir Plantation. My dear friend: In reply to your favor regarding the money of your sister, I can not advise you anything today, and I will let you know next month, as we are doing all in our power to pay her something. . . ."

"Mr. Simón Pierluisi. My dear friend: I received your favor and in answer to your question I must inform you that the interest due your sister has not been paid because we have had a run of bad luck. I already had a talk with Manolo in this respect and he told me that he is expecting to settle the many obligations undertaken by him these past months, but that business is improving much and I think that the said interest will soon be paid."

This acknowledgment operated as a revival of the obligation, even as against the debtor partnership. As stated by us in *Piñeiro* v. *Pérez,* 20 P.R.R. 223, "the clear and specific renewal of a note by a bankrupt after his adjudication as such and before his discharge is valid and the debt is actionable". We there cited the case of *Zavelo* v. *Reeves,* 227 U.S. 625, wherein it was said (pp. 629, 630):

"It is contended as to both replications that although a debt barred by discharge in bankruptcy may be revived by a new promise made after the discharge, this cannot be done by a new promise made in the interim between the adjudication and the discharge.

"It is settled, however, that a discharge, while releasing the bankrupt from legal liability to pay a debt that was provable in the

bankruptcy, leaves him under a moral obligation that is sufficient to support a new promise to pay the debt. And in reason, as well as by the greater weight of authority, the date of the new promise is immaterial. The theory is that the discharge destroys the remedy but not the indebtedness; that, generally speaking, it relates to the inception of the proceedings and the transfer of the bankrupt's estate for the benefit of creditors takes effect as of the same time; that the bankrupt becomes a free man from the time to which the discharge relates, and is as competent to bind himself by a promise to pay an antecedent obligation, which otherwise would not be actionable because of the discharge, as he is to enter into any new engagement. And so, under other bankrupt acts, it has been commonly held that a promise to pay a provable debt, notwithstanding the discharge, is as effectual when made after the filing of the petition and before the discharge as if made after the discharge."

The eighth error assigned, to the effect that the partnership property should have been exhausted before proceeding against the partners, has been dealt with by us at the beginning of this opinion. It is contended under the ninth assignment, that no judgment against the partners should have been rendered upon a promissory note subscribed by the firm, and that the action should have been prosecuted against the partnership, even after its dissolution, because its personality continued while under liquidation. The basis for this contention is that the averment in the complaint, that the partnership was dissolved and has no property, is insufficient because the result of the dissolution of the partnership by expiration of its term or the termination of the enterprise or the entire loss of the capital or the failure thereof (section 221 of the Code of Commerce) would not be the loss of the legal personality of the partnership but its dissolution and liquidation, the latter being a prerequisite to the subsidiary liability of the partners. However, the plaintiff did not confine herself to alleging what the appellants claim. It was set forth in the sixth paragraph of the complaint that the firm of Monllor & Co. had wound up its affairs and discontinued its business, and that it no longer existed as a com-

mercial entity. In view of such allegations, it can not be contended that on the face of the complaint it appears that the partnership is now under liquidation; the facts as alleged are sufficient for suing the partners personally.

The last contention that the imposition of costs was not proper is also untenable, in view of the conclusions reached by the trial court, which we affirm.

The judgment appealed from must be affirmed, but modified in the sense that the pronouncement against Tomás Monllor shall be effective only in regard to the conjugal property.