516 F.2d 864
 In the Matter of JERCYN DRESS SHOP, a Partnership.
Jack A. SCHERER and Eva Scherer, as general partners,
jointly, Appellees,
v.
LESLIE FAY SALES, a Division of Leslie Fay, Inc., et al., Appellants.
 No. 488, Docket 74-2142.
 United States Court of Appeals,
Second Circuit.
 Submitted April 4, 1975.
Decided May 20, 1975.
 
 Robert P. Herzog, New York City, on the brief, for appellants.
 Hauptman & Hauptman, Brooklyn, N. Y., on the brief, for appellee Jack A. Scherer.
 Nathan B. Fogelson, New York City, on the brief, for appellee Eva Scherer.
 Before ANDERSON, MANSFIELD and OAKES, Circuit Judges.
 ROBERT P. ANDERSON, Circuit Judge:
 
 
 1
 Leslie Fay Sales, a division of Leslie Fay, Inc., Falchick Dress Co., Inc., and Campus Juniors, Inc., three creditors of Jercyn Dress Shop (Jercyn), a partnership, appeal from the district court's decision and order affirming the bankruptcy court's dismissal of appellants' involuntary petition in bankruptcy to the extent that it was addressed against Jercyn's partners, Jack A. Scherer and Eva Scherer, husband and wife, as opposed to the partnership entity itself, on the ground that these partners had not committed an act of bankruptcy within the contemplation of § 3a of the Bankruptcy Act (the Act), 11 U.S.C. § 21(a).[1]
 
 
 2
 The facts are not in dispute and may be briefly summarized. On October 19, 1972 the Scherers signed and executed an indenture whereby "Jercyn Dress Shop, a co-partnership comprised of Jack A. Scherer and Eva Scherer," made a general assignment of its assets to Bernard Sands for the benefit of its creditors. The assignment was recorded on October 20, 1972 in the office of the Clerk of Kings County, New York.
 
 
 3
 On November 15, 1972, the appellants filed an involuntary petition in bankruptcy in the United States District Court for the Eastern District of New York against "Jercyn Dress Shop, A Partnership, and Jack A. Scherer, and Eva Scherer, as General Partners, Jointly." The petition alleged only the following act of bankruptcy:
 
 
 4
 "4. Within four months next preceding the filing of this petition, the alleged bankrupts committed an act of bankruptcy in that the alleged bankrupts did heretofore to wit, on or about October 20, 1972, make an assignment for the benefit of creditors to Bernard Sands, which assignment was recorded in the office of the Clerk of the County of Kings, State of New York, on October 20, 1972."
 
 
 5
 On December 6, 1972, Jercyn consented in writing to its adjudication in bankruptcy but the Scherers filed a joint answer denying the material allegations of the involuntary petition and moving for dismissal of the petition against them as individual partners. They asserted, as an affirmative defense, that paragraph 4 of appellants' petition alleged an act of bankruptcy solely by the partnership, and that they personally had committed no act of bankruptcy as defined in § 3(a) of the Act which would subject them to adjudication.
 
 
 6
 In an opinion dated April 3, 1973, the Referee in Bankruptcy held that the assignment for the benefit of creditors relied on by appellants as an act of bankruptcy was executed by the partnership as an entity and not by the Scherers as individuals, and that as a matter of law "this partnership act could not be imputed ipso facto to them and thus be used as an act of bankruptcy against them." He, therefore, dismissed the petition against the Scherers individually by order dated April 5, 1973, which was affirmed after review by the district court in a decision and order dated August 14, 1974. This appeal followed.
 
 
 7
 Appellants do not allege that the Scherers are individually insolvent, have executed general assignments of their individual properties, or have committed any acts of bankruptcy apart from their role as partners in the making of the general assignment by the partnership. The sole issue on appeal, therefore, is whether a general assignment by a partnership of its assets for the benefit of its creditors is ipso facto an act of bankruptcy by the individual partners as well. This court holds that it is not.
 
 
 8
 As reflected inter alia by §§ 1(23), 5a and 5j of the Bankruptcy Act, 11 U.S.C. §§ 1(23), 23(a), 23(j),[2] Congress has adopted the "entity theory" of partnership bankruptcies by which "a partnership may be adjudged a bankrupt as a separate entity without reference to the bankruptcy of the partners as individuals." Liberty National Bank v. Bear, 276 U.S. 215, 220-221, 48 S.Ct. 252, 72 L.Ed. 536 (1928). See also 1A Collier, Bankruptcy P 5.03, at 694-698 (14th ed. 1975). Under § 5b of the Act (11 U.S.C. § 23(b)),[3] a partnership may be adjudged a bankrupt either upon its filing of a voluntary petition or upon the filing of an involuntary petition against it. In keeping with the entity theory, therefore, the partnership must be able to commit at least some acts of bankruptcy (see 11 U.S.C. § 21(a)) separate and distinct from personal acts of bankruptcy committed by its partners. This is most clearly reflected in Liberty National Bank v. Bear, supra, in which the Supreme Court upheld the adjudication of the bankruptcy of a partnership entity alone where the bankruptcy proceedings were initiated by an involuntary petition alleging that the partnership had made a general assignment of partnership assets for the benefit of its creditors. See 276 U.S. at 217, 48 S.Ct. 252, 72 L.Ed. 536. While in Liberty, unlike the instant case, the involuntary petition did not expressly seek an adjudication of the bankruptcy of the individual partners based upon the same general assignment that was alleged to constitute an act of bankruptcy by the partnership (see 276 U.S. at 217, 48 S.Ct. 252, 72 L.Ed. 536), it is impossible to read Liberty, as a whole, as standing for the proposition asserted by appellants that only when creditors fail to allege in an involuntary petition that the general assignment by the partnership constituted an act of bankruptcy by the individual partners as well, can the partnership be adjudged bankrupt as a separate entity. Such an interpretation would radically undercut the Act's partnership entity theory because a partnership can never act except through its partners.
 
 
 9
 Appellants object that under this interpretation preferential transfers by the individual partners, should they later become bankrupt, and by the partnership will bear different dates to the possible detriment of partnership creditors. It is apparent, however, that any differences in such filing dates can also work to the advantage of partnership creditors. In Liberty National Bank v. Bear, supra, for example, the bank's judgment lien against the real estate of the individual partners withstood an attack under §§ 67c[4] and 67f[5] of the Bankruptcy Act of 1898 where the partners' bankruptcy petitions were filed more than four months after the bank obtained the judgment lien which was upon the real estate owned by the partnership as well as that owned by the individual partners, even though the lien was invalid as against the partnership itself since a bankruptcy petition had been filed against the partnership within four months of the obtaining of the lien.
 
 
 10
 Furthermore, partnership creditors are adequately protected by other provisions of the Act. Any conversion of partnership property into property of an individual partner, for example, must have been bona fide and without intent to hinder, delay, or defraud creditors. Where an insolvent partnership has made a fraudulent transfer in order to conceal assets from its creditors, those assets belong to the insolvent partnership and its creditors. See 1A Collier, Bankruptcy P 5.28, at 738 (14th ed. 1975). Also the partnership trustee cannot prevent the partnership creditors from obtaining in an appropriate forum in personam judgments against the individual partners on unpaid partnership debts. See First National Bank of Herkimer v. Poland Union, 109 F.2d 54 (2 Cir. 1940), cert. denied, 309 U.S. 682, 60 S.Ct. 723, 84 L.Ed. 1026 (1940).
 
 
 11
 Most importantly, Rule 108(c) requires each unadjudicated general partner to file a statement of his personal assets and liabilities within 10 days of the qualification of the trustee in the partnership bankruptcy proceedings (see 1A Collier, Bankruptcy P 5.25, at 734 (14th ed. 1975)), and the bankruptcy court in appropriate circumstances may administer the personal estates (Francis v. McNeal, 228 U.S. 695, 33 S.Ct. 701, 57 L.Ed. 1029 (1913); 1A Collier, Bankruptcy P 5.25, at 734 (14th ed. 1975)) in order to insure that property in excess of each individual's debts is available for payment of the partnership debts (see In re Ira Haupt & Co., 240 F.Supp. 369 (S.D.N.Y.1965); 1A Collier, Bankruptcy P 5.25, at 734.1-734.2 (14th ed. 1975)) even though the nonadjudged general partners have not personally committed an act of bankruptcy and cannot obtain a discharge (see First National Bank of Herkimer v. Poland Union, supra, 309 U.S. at 56-57,60 S.Ct. 723, 84 L.Ed. 1026; J. Wm. Moore & W. Phillips, Debtors' And Creditors' Rights, at 5-94 (1966)), because each general partner remains primarily liable for the partnership debts (see Francis v. McNeal, supra ; 1A Collier, Bankruptcy PP 5.03, at 698, 5.25 at 734-734.1 (14th ed. 1975)). Thus even though the individual partners are not automatically placed in bankruptcy along with the partnership entity, the partnership creditors still have ample protection.
 
 
 12
 The judgment of the district court is affirmed.
 
 
 
 [1]
 11 U.S.C. § 21(a) provides:
 "(a) Acts of bankruptcy by a person shall consist of his having (1) concealed, removed, or permitted to be concealed or removed any part of his property, with intent to hinder, delay, or defraud his creditors or any of them, or made or suffered a transfer of any of his property, fraudulent under the provisions of section 107 or 110 of this title; or (2) made or suffered a preferential transfer, as defined in subdivision a of section 96 of this title; or (3) suffered or permitted, while insolvent, any creditor to obtain a lien upon any of his property through legal proceedings or distraint and not having vacated or discharged such lien within thirty days from the date thereof or at least five days before the date set for any sale or other disposition of such property; or (4) made a general assignment for the benefit of his creditors; or (5) while insolvent or unable to pay his debts as they mature, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property; or (6) admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt."
 
 
 [2]
 11 U.S.C. § 1(23) provides, in relevant part, that " 'Persons' shall include . . . partnerships . . . ."
 11 U.S.C. § 23(a) provides:
 "(a) A partnership, including a limited partnership containing one or more general partners, during the continuation of the partnership business or after its dissolution and before the final settlement thereof, may be adjudged a bankrupt either separately or jointly with one or more or all of its general partners."
 11 U.S.C. § 23(j) provides:
 "(j) The discharge of a partnership shall not discharge the individual general partners thereof from the partnership debts. A general partner adjudged a bankrupt either in a joint or separate proceeding may, pursuant to the provisions of this title, obtain a discharge from both his partnership and individual debts."
 
 
 [3]
 11 U.S.C. § 23(b) provides:
 "(b) A petition may be filed by one or more or all of the general partners in the separate behalf of a partnership or jointly in behalf of a partnership and of the general partner or partners filing the same: Provided, however, That where a petition is filed in behalf of a partnership by less than all of the general partners, the petition shall allege that the partnership is insolvent. A petition may be filed separately against a partnership or jointly against a partnership and one or more or all of its general partners."
 
 
 [4]
 Section 67c of the Bankruptcy Act of 1898 provided, in applicable part:
 " 'A lien created by or obtained in or pursuant to any suit . . . which was begun against a person within four months before the filing of a petition in bankruptcy by or against such person shall be dissolved by the adjudication of such person to be a bankrupt if . . . it appears that said lien was obtained and permitted while the defendant was insolvent and that its existence and enforcement will work a preference. . . .' " Liberty National Bank v. Bear, 276 U.S. 215, 219, 48 S.Ct. 252, 253, 72 L.Ed. 536 (1928).
 
 
 [5]
 Section 67f of the Bankruptcy Act of 1898 provided, in relevant part:
 " 'That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the . . . lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt. . . .' " Liberty National Bank v. Bear, supra, n. 1, 276 U.S. at 219-220, 48 S.Ct. 252, 253, 72 L.Ed. 536.