| 168 | 331 |
| f196 | 230 |
| e196 | 300 |
| 168 | 331 |
| 199 | 579 |

George N. Wilcox, Appellant, *v.* C. M. Derickson and G. M. Derickson, Executors of D. V. Derickson, Deceased, Impleaded with Cyrus Kitchen et al., Partners, as the Meadville Savings Bank.

*Partnership—Dissolution—Partner.*

The general estate of a deceased partner is not liable for debts contracted after his death unless distinctly made so by the clear language of the partnership ageeement, or by the will of the decedent.

*Partnership — Joint stock company at common law.— Dissolution by death—Liability of estate of deceased member.*

The articles of a joint stock company at common law, engaged in the banking business, provided that the death of a stockholder should not operate as a dissolution of the association, " but the shares of such decedent shall thereupon vest in his executors, or administrators, or devisees, of said stock, who shall succeed with like effect as provided in case of a transfer upon the books of the association." It was provided in case of a transfer that " the assignee or assignees of such share or shares shall thereby as to such share or shares succeed and become subject to all the rights and obligations of an original party thereto." And it was further provided as follows: " The holders of stock in this association either by an original subscription, transfer or otherwise, shall, by virtue of such subscription, or acceptance of such transfer, be subject to and thereby take upon themselves the several and respective duties and obligations devolved and incumbent upon them as stockholders or directors, as the case may be." A member died, and his executors did not accept his stock. *Held*, that his general estate was not liable for debts contracted by the association after his death.

Argued May 1, 1895. Appeal, No. 416, Jan. T., 1895, by plaintiff, from judgment of C. P. Crawford Co., May T., 1894, No. 28, for defendants on case stated. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Case stated.

The case stated was as follows :

" In 1867 Cyrus Kitchen and others organized a general copartnership under the name and style of the Meadville Savings Bank, for the purpose of carrying on a general banking business in the city of Meadville, and signed Articles of Asso-

ciation, a copy of which is hereto attached, and marked 'Exhibit A,' and made a part of this case stated.

" On Jan. 20, 1877, five shares of the capital stock of said association, originally issued to A. P. Ingraham, were regularly transferred to D. V. Derickson, and were held by the said Derickson until the date of his death, on July 21, 1891. The said D. V. Derickson never signed said articles of association. He was never a director or officer of said association, and was never advertised as a stockholder. Defendants' testator made no mention in his will of his said stock.

" The said association continued to do business after his death, without any change in the method of keeping their accounts, or any distinction between deposits prior and subsequent to said death.

" On Jan. 13, 1894, the Meadville Savings Bank closed its doors, and on Jan. 23, 1894, made a general assignment to J. W. Smith, for the benefit of its creditors.

" George N. Wilcox, the plaintiff, was a depositor in said bank prior to the death of said Derickson, and on that date there was due him on open account the sum of $1,952.91. Subsequently said George N. Wilcox continued to do business with said bank, depositing from time to time, and checking against his said account; and from March 3, to April 1, 1892, his account was overdrawn. It was again overdrawn from May 6, to May 11, and again from Dec. 6, to Dec. 13, 1892. But on Jan. 13, 1894, when the doors were closed, there was due him on said account the sum of $2,742.27. The executors of said decedent never accepted the said stock of their testator under the said Articles of Association, never took any part in the business of said association, nor in any way admitted or assumed any liability as stockholders.

" If the court be of opinion on the above facts that the plaintiff is entitled to recover, then judgment to be entered in favor of plaintiff and against defendants for such sum as plaintiff is legally entitled to recover; otherwise judgment to be entered for defendants. Either party reserves the right to take an appeal to the Supreme Court from judgment entered hereon."

The material portions of the Articles of Association were as follows:

" We, the subscribers hereto, hereby agree to form ourselves

into an association by the name, style and title of the Meadville Savings Bank, for the purpose of dealing in exchange, bills, notes, bonds and other securities, receiving deposits and generally carrying on like business.

"The capital stock of said association shall consist of five hundred shares of one hundred dollars each, of which the parties have subscribed the number set opposite their respective names, and agree to pay fifty dollars on each share in cash at the time of subscribing therefor, and five dollars on each share on the first day of May next, and a like amount every thirty days thereafter until the whole is paid. The stock and interest of and in said association shall be held as and in the nature of personal and partnership property only, and shall always be liable and deemed to be hypothecated for any indebtedness or liability of the holder thereof to said association, whether presently due or otherwise; and the said stock shall not be assigned or transferred without the consent of the board of directors; and all the property of and belonging to said association, as well lands and tenements as chattels, rights and credits, shall be held by and in trust for said association as partnership or associate property and assets, and for partnership or associate purposes. The stock, shares and interest in said association shall be assignable and transferable only on the books thereof and with the assent of the board of directors, in the presence of the president and cashier, and upon such transfer the assignee or assignees of such share or shares shall thereby, as to such share or shares, succeed and become subject to all the rights and obligations of an original party thereto. Provided, that no stockholder shall be entitled to vote upon more than fifty shares of stock owned by him. Provided, also, that none of the stock of said association shall be held by a minor, either personally or by guardianship, except in pursuance of a devisee, nor by any corporation. And, provided that in case of the refusal of the board of directors to assent to the transfer of any such stock to any person competent to hold the same, then and thereupon the holder thereof shall be entitled to require of said association to receive an assignment of such share or shares of stock and to receive therefrom a sum equal to the par value of such share or shares with the addition of a proportional part of the contingent fund as indicated by the last semi-annual statement of the condition of the association.

" This association shall continue until it shall be declared to be dissolved by the votes of the holders of a majority of the shares of stock entitled to representation at a stockholders' meeting called for that purpose, and no general assignment of the assets of said association shall be made except in pursuance of a like vote, nor shall the death of a stockholder be, nor operate as a dissolution of said association, but the shares of such decedent shall thereupon vest in his executors or administrators or devisees of said stock who shall succeed with like effect as provided in case of a transfer upon the books of the association, except in the case of a minor devisee the stock shall stand in the name of the guardian of such minor. The holders of the stock of this association either by original subscription, transfer or otherwise, shall, by virtue of such subscription, or acceptance of such transfer, be subject to and thereby take upon themselves the several and respective duties and obligations devolved and incumbent upon them as stockholders or directors, as the case may be."

NOYES, P. J., of the 37th judicial district specially presiding, delivered the following opinion :

" On the 20th of January, 1877, D. V. Derickson, the defendants' testator, became a member of a partnership association doing business in the name and style of the Meadville Savings Bank, by a transfer on the books of the association, in the manner prescribed by the articles, of five shares of stock originally held by A. P. Ingraham. He died on the 21st of July, 1891, leaving a will, in which he makes no specific reference to the stock in this bank. The executors have never accepted the stock, or in any manner acted as partners.

" The articles of association of the bank provide that it shall have a capital stock of $50,000 divided into 500 shares of $100 each ; that the business shall be transacted by officers elected by the shareholders ; that transfers of the stock may be made on the books in the manner provided by the articles ; that the death of a member shall not dissolve the partnership ; but that his executor, administrator or devisee shall succeed to his rights, in the manner provided in case of a transfer on the books.

" The plaintiff is a depositor and creditor of the bank, which owed him $2,742.27 on the 13th of January, 1894, when the bank failed and closed its doors. All of this indebtedness was con-

tracted by the bank after the death of D. V. Derickson.   The question of law presented is whether under these facts and in view of the language of the Articles of Association the executors are liable to the plaintiff for this indebtedness.

" It is, perhaps, not strictly correct to say that the death of one partner works no dissolution of the firm, where by agreement of the partners the business is to be continued notwithstanding the death, for a partnership cannot exist without partners ; and a dead man's estate, apart from the persons to whom it has passed by law at his death, has no capacity to fill the place in the partnership made vacant by his death : Parsons on Contracts (1st ed.), 406–451.   It is, however, well settled that the usual consequences of a dissolution, whether by transfer of the interest of a partner to another, or by death of one of the partners, may be avoided by suitable provisions in the partnership agreement, or by provisions in the will of the dying partner, if agreed to by the survivors.   If such is the agreement the business may be continued after the death as before.   The personal representative, or devisee, of the decedent may not demand an account until the termination of the partnership, by the terms of the agreement.   And so much of the decedent's estate as is invested in the partnership venture, or is by him subjected to the demands of the partnership business, will pass into the hands of those to whom it is given by the law, clogged with the liabilities thus placed upon it by its former owner. These principles are well settled both in our own state and elsewhere : Gratz v. Bayard, 11 S. & R. 41 ; Laughlin v. Lorenz, 48 Pa. 275 ; 17 Am. & Eng. Ency. of Law, 1134 ; Lindley on Part., 1353, (*605) note 1.

" It seems quite clear that the liability of a deceased partner's estate for debts contracted after his death, whether general or specific, rests not upon the common law of partnerships, or the ordinary liability of partners for firm debts, but upon the special provisions of the agreement made by the deceased partner, or the terms of his last will.   A change of partners whether by transfer or by death, necessarily involves a dissolution of the firm ; if the business goes on with new partners in place of the old this involves the organization of a new firm.   So it was held in respect to transfers of stock in a banking partnership in Christy v. Sill, 131 Pa. 492 ; and the reason is much stronger

in case of death than of transfer. All the cases which have held a deceased partner's estate liable to creditors of the partnership, whose debts were contracted after the death, have rested the liability either upon the terms of the agreement or the will, and not upon any common-law liability as partner. This being so, we are called upon to determine what liability the defendants' testator assumed when he accepted the transfer of the stock of Ingraham in this partnership. By so doing he substantially agreed to be bound by the terms of the partnership agreement. If the articles expressly declare that the whole estate of each partner shall be considered as embarked in the business and shall continue liable for losses occurring after the death of the partner, then we may enforce the terms of this contract against the defendants, there being no question raised in behalf of creditors claiming prior liens upon the estate. But if the contract is silent upon the particular point involved here, or if its language is ambiguous and uncertain, how shall it be construed? This, in the light of the decided cases, is the real question which we are obliged to determine.

"In Burwell v. Mandeville, 2 How. 560, it was held that nothing short of the most clear and unambiguous language would justify the court in holding the general estate of the testator liable for the debts of a partnership, continued under his will after his death, by reason of the manifest inconvenience of such a rule; Judge STORY citing with approval the case of Ex parte Garland, 10 Ves., Jr. 110, in which the inconvenience was strongly put by Lord ELDON, the lord chancellor. In Stanwood v. Owen, 14 Gray, 195, the Supreme Court of Massachusetts, intimating strongly in the opinion that the general estate of a deceased partner is not liable for firm debts contracted after his decease, although by the articles death was not to dissolve the partnership, held that such debts could not be allowed to share with the individual debts of a decedent in the distribution of his estate.

"By the same court, in Phillips v. Blatchford, 137 Mass. 510, it is again intimated that no general liability to creditors of the firm exists unless representatives of the estate enter into the partnership, and themselves become partners. But it was held that the partnership agreement, in the case then before the court, practically amounted to a covenant on the part of

each partner to indemnify his copartners against the payment of more than a ratable proportion of the partnership debts ; and hence that one of the surviving partners, who had paid off more than his share of partnership debts, might recover against the executors for contribution.

" In Stewart et al. v. Robinson, 115 N. Y. 328, the principle announced in Burwell v. Mandeville, supra, was applied to the construction of a partnership agreement; and it was held that the general estate of a deceased partner was not liable, notwithstanding provisions in the agreement, for the continuance of the partnership, in the absence of clear language subjecting the general estate to such liability.

" The statement in the 17 Am. & Eng. Ency. of Law, 1135, that the rule of liability is different in case of a partnership having transferable shares from that applicable to other partnerships, is not in the least sustained by the cases cited. Blodgett v. The Bank, 49 Conn. 9, was a case in which the executors had actually entered into the partnership and become personally liable as partners : Kottnitz v. Alexander, 34 Tex. Rep. 689, was somewhat peculiar in its facts, but the question indicated did not arise, and the one now under consideration is not deliberately treated.

" There is apparent in the cases a consciousness in the minds of the judges of the extreme inconvenience of subjecting estates of decedents to a liability which might unreasonably delay their settlement, and necessitate recalling legacies and devises from the hands of their recipients years after they had been received, to satisfy demands which had no existence at the time of distribution ; and a strong reluctance for these reasons to declare such a liability. A possible exception to these cases, is our own case of Laughlin v. Lorenz, supra. In that case, the principal question was not as to debts contracted after the death of a dying partner, but as to the rights of third parties growing out of the settlement, adjustment and winding up of the partnership. Incidentally the liability for such debts was involved and was decided. The language of Judge AGNEW, in his opinion, does contain an intimation that the rule which we have found all but uniform in all other courts, viz, that the general estate is not liable for such debts unless distinctly made so by clear language either in the contract or the will, is not correct;

but the converse of it, viz, that the estate is to be regarded as liable unless expressly exempted by the contract, or the will. But it is not clear that the learned judge really intended to sanction such a departure from the course of decision in other courts, nor that his mind was drawn to its consequences. The conclusion reached by him, and his brethren, may and probably did rest upon other considerations.

" It cannot be true that the general estate is liable unless this liability is limited by the contract, or the will of the dying partner, unless it be also true that such liability flows from the partnership relation and is, in substance, the ordinary common law liability of each partner jointly and severally with each of the others for every debt contracted by the firm. Surely a dead man cannot in the eye of the law have rights or incur liabilities. Nor can his property stand alone, by itself, disconnected from personal ownership and sustain such liability. Nor is it reasonable or logical that a person should be held to be a partner with others without his own agreement to become such express or implied. And indeed our Supreme Court has decided that executors cannot be so regarded in the absence of an agreement: Bank v. Pennock, 2 Mona. 166. Moreover, if such a liability exists by reason of the partnership relation, and the stipulation for its continuance after the death of one of the partners, how can the dying partner by provisions in his will exempt his estate from liability ?

" If we are correct, as we think the great weight of authority makes clear, in saying that the liability of the estate of a deceased partner for debts contracted after his death, if any ⋅ exist, flows from the express covenant or agreement of the decedent, or the express direction in his will accepted and agreed to by the survivors, then it seems reasonable, in view of the departure from the ordinary rule of law and the extreme inconvenience of the contrary rule, that the intention substantially to embark his whole estate in the partnership, or to make it available to the partnership uses, should appear before the general estate should be held liable for such debts. What then is the true construction of the articles of copartnership to which the testator assented when he accepted a transfer of stock ?

" The articles provide that the death of a stockholder shall not operate as a dissolution of said association :

"'But the shares of such decedent shall thereupon vest in his executors, or administrators, or devisees, of said stock, who shall succeed with like effect as provided in case of a transfer upon the books of the association.' It was provided in case of a transfer that 'the assignee or assignees of such share or shares shall thereby as to such share or shares succeed and become subject to all the rights and obligations of an original party thereto.' And it was further provided as follows : ' The holders of stock in this association either by an original subscription, transfer or otherwise, shall, by virtue of such subscription, or acceptance of such transfer, be subject to and thereby take upon themselves the several and respective duties and obligations devolved and incumbent upon them as stockholders or directors, as the case may be.'

" While the language of the contract is that the partnership shall not be dissolved by a death, the meaning plainly is that the dissolution caused by death shall not involve the winding up of the partnership business, the settlement of the partnership account, nor the withdrawal of any portion of the capital. An easy means is provided by which a new partnership consisting of the surviving partners and one or more new members who shall take the place of the dead partner may be formed to continue the business. The assignee in the case of a transfer becomes a partner in this new firm by acceptance of the transfer on the books of the association. And it is to be noted that in case of death the executors, administrators and devisees of the stock are mentioned together, the like provision being made as to all.

" Unless we are prepared to hold that one to whom stock in such partnership is devised becomes a partner in the new firm, and subject to liability as such partner by virtue of the devise itself, without any acceptance of it on his part, or acquiescence in any way in the provisions of the partnership agreement, we cannot hold that executors or administrators become so liable merely because they are such. If the stock is accepted and the relation of partner established between the survivors and the executors, the case is free from difficulty. But where it is not so accepted they cannot be charged with liability as partners any more than could the devisee who has not accepted.

" We fail to discover in the language used in this contract

any intention on the part of the contracting parties to subject their estates, in case of their death, to the vicissitudes of the partnership business regardless of the wishes of those to whom the estate descends. Doubtless the right to an account and to withdraw the capital of the testator from the business does not exist, by reason of the partnership agreement to the contrary. And so much of the testator's estate as was invested in the partnership remains and is liable for the debts incurred in the business. Possibly the language of the partnership agreement may be construed as a covenant by each partner with the others to indemnify them against more than their proper share of loss. But there is nothing in the agreement which can give the creditors of the partnership, whose debts have arisen since the testator's death, a right to resort to his general estate. For these reasons we are of opinion that upon the case stated the law is with the defendants.

" Judgment is therefore directed to be entered in favor of the defendants in accordance with the agreement of the parties."

*Error assigned* was entry of judgment as above.

*G. W. Haskins, H. J. Humes, F. J. Thomas* and *John O. McClintock* with him, for appellant.—By express agreement a partnership may continue after the death of one of its members: Phillips v. Blatchford, 137 Mass. 510; Gratz v. Bayard, 11 S. & R. 41; Laughlin v. Lorenz, 48 Pa. 275; Leaf's App., 105 Pa. 505; Gandy v. Dickson, 36 W. N. C. 97; Butler v. Am. Co., 46 Conn. 136; Blodgett v. Am. Nat. Bank, 49 Conn. 9.

The cases of continuation by virtue of a contract are decided upon their own facts: Stewart v. Robinson, 115 N. Y. 328; Robinson v. Floyd, 159 Pa. 177.

But should not this case be determined as in the case of a corporation with general individual liability of stockholders? In a corporation of this kind the estate is held liable for debts contracted after the decease: Bailey v. Hollister, 26 N. Y. 112; Miller v. State, 15 Wall. 497; Cochran v. Wiechers, 119 N. Y. 403.

*J. W. Smith, Geo. F. Davenport* with him, for appellee.—The death of Derickson actually dissolved the partnership, notwith-

standing the stipulation in the articles: "nor shall the death of a stockholder be nor operate as a dissolution of said association:" Pars. on Part., 4th ed. sec. 343; Shamburg v. Ruggles, 83 Pa. 148; Christy v. Sill, 131 Pa. 492; Campbell v. Floyd, 153 Pa. 84; Robinson v. Floyd, 159 Pa. 165, 177; Caldwell v. Stileman, 1 Rawle, 216; Marlett v. Jackman, 3 Allen, 287; Gratz v. Bayard, 11 S. & R. 41; Laughlin v. Lorenz, 48 Pa. 275; Burwell v. Mandeville's Exrs., 2 How. 560; Pitkin v. Pitkin, 7 Conn. 307; Ex parte Garland, 10 Ves. 110; Brasfield v. French, 59 Miss. 632; 17 Am. & Eng. Ency. of Law, 1135; Smith v. Ayer, 101 U. S. 320; Wild v. Davenport, 7 Atl. R. 295; Vincent v. Martin, 79 Ala. 540; Lucht v. Behrens, 28 Ohio, 231; Jones v. Walker, 103 U. S. 444.

PER CURIAM, May 20, 1895:

The pivotal question in this case is whether the stipulation in the articles of association, that death shall not dissolve the relation of the decedent and his estate to the bank, compels an executor to accept the stock that had been held by his testator, and puts it out of his power to abandon it under any circumstances. The learned judge who tried this case in the court below answered this question in the negative.

We are satisfied with the reasons he has given in support of his conclusion and affirm the judgment on his opinion.