Tate et al. *v.* Hoover, Appellant.

Argued April 13, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*W. L. Pace,* for appellant.

*James P. Harris,* with him *Albert H. Aston* and *Vandling D. Rose,* for appellee.

OPINION BY MR. JUSTICE MAXEY, May 27, 1942:

This is an appeal from a decree ordering the appellant to "surrender and cancel" a deed for certain premises in West Pittston, Luzerne County. The title to these premises were adjudged to be vested in O. M. Tate, Jr.,

Trustee in Bankruptcy for the creditors of Post and Company, a co-partnership. (This title was subject to a lease of the Socony-Vacuum Oil Company).

The proceedings were begun by a bill in equity filed by the Trustee in Bankruptcy of Post and Company, alleging that the deed of Martha L. Post (allegedly one of the co-partners of Post and Company), dated December 1, 1933, to the premises in question (and reserving a life estate to the grantor, now deceased) "rendered" the grantor "insolvent within the meaning of the Fraudulent Conveyance Act of Pennsylvania and also rendered Post and Company insolvent within the meaning" of that act and that the conveyance "was made with actual intent . . . to hinder, delay and defraud the then present creditors of her individual estate and particularly, the then present creditors of the said partnership of Post and Company, bankrupt, to whom she was jointly and severally liable as one of the partners of which the said partnership of Post and Company, bankrupt was composed."

Frank H. Post, R. W. Barton and Fred S. Post were members of Post and Company doing business in the City of Knoxville, Tennessee. On November 2, 1911, Frank H. Post died in Knoxville, without a will. His heirs were his widow, Martha L. Post (his second wife) and three children; Fred, Mrs. J. R. Williams and Helen G. Post, then a minor (later Helen Post Morris), all of Knoxville. The business of Post and Company continued until November 27, 1933. In some manner not revealed by the record Barton got out of the partnership. In answer to an interrogatory, Helen Post Morris deposed, that "she [Mrs. Post] inherited it [her interest in the partnership] from my father. After the death of my father, the company was carried on as the partnership of Post and Company with Mrs. Post, Fred Post, Mary Post Williams and myself as partners" but she didn't "know the provisions of the agreement" and she didn't "remember the provisions of the agreement" and she didn't "have the

contract." "Each of us contributed the shares which we inherited from our father." Fred S. Post in his depositions testified: "My father, Frank H. Post, died without a will November 2, 1911. At the time of his death he was a member of Post and Company, which consisted of himself, R. W. Barton and myself. Immediately after his death a new partnership was formed and his interest in the estate was proportioned as declared by law, between his widow, Mrs. Frank Post, Mrs. J. R. Williams, Helen G. Post, who was a minor at the time, and myself. This partnership continued until the bankruptcy proceedings mentioned above. I found among some old records a statement of the capital invested in Post and Company as of June 30, 1923, that Mrs. M. L. Post had invested $4,500. This same statement shows that she was credited with $1,282.00 in profits." [1]

---

[1] The testimony quoted indicates the uncertainty of the nature of this partnership. It does not appear whether the continuance of the enterprise after Post's death was for the benefit of the surviving partners and the decedent's estate or whether by agreement the property of the deceased member was to remain subject to the risks of the business and limited to the decedent's interest in the business as it existed at the time of his death: See *Wilcox v. Derickson*, 168 Pa. 331, 31 A. 1080. The rights of subsequent creditors are controlled by the terms of the agreement of continuance and not by common law principles of partnership. If the agreement contemplates that the rights of subsequent creditors shall be confined to the assets of the continued firm in so far as the decedent's estate is concerned, this intention forms the measure and extent of their rights. Third persons dealing with a continued enterprise are therefore bound to inquire as to the extent of the authority conferred by the continuation agreement; otherwise they extend credit at their own risk. See 1 Rowley, Partnership (1916), Sec. 594. See also Warner Fuller, 50 Yale Law Journal 210; 20 R. C. L. Sec. 232, p. 995; 20 ed. 806, and the case of Cameron v. Nat'l Surety Co., 272 Fed. 874, 877, where the Circuit Court of Appeals (8th Cir.) held that: ". . . Under the law, therefore, it cannot be said that Mary T. Cameron had any interest in the partnership property, *because the affairs of the partnership have never been settled,* and if it should be true that she had an interest in such property, *it would not establish the fact that she was a partner and liable for the debts of the firm."* (Italics supplied).

On November 27, 1933, an involuntary petition in bankruptcy was filed, by three of its creditors, against the partnership and Fred S. Post, in the United States District Court for the Eastern District of Tennessee, Northern Division. This petition charged, that Fred S. Post, Mary Post Williams, Helen Post Morris and Mrs. Frank H. Post were engaged in business under the name of Post and Company; that Post and Company owed debts exceeding $1,000; that the petitioners were creditors of Post and Company with claims in excess of $500; that Post and Company was insolvent and that it conceded its inability to pay its debts and its willingness to be adjudged a bankrupt; and prayed "service of the petition with subpœna be made upon Post and Company and Fred S. Post as provided in Act of Congress relating to bankruptcy and Post and Company and Fred S. Post be adjudged bankrupts." Admittedly no process or "petition with subpœna" or any notice of these proceedings was ever served upon Martha L. Post individually or otherwise.[2]

On December 19, 1933, the partnership was adjudicated a bankrupt. This bankruptcy proceeding took the regular course; Post and Company, the bankrupt, filed schedules of its debts and assets; the first meeting of creditors was held and a trustee was elected for Post and Company, the bankrupt, and its creditors duly filed claims amounting to $19,515.74 against this estate, which were allowed. The bankrupt estate was administered and paid dividends to the unsecured creditors of the bankrupt amounting to $2,746.22, leaving a balance due to the unsecured creditors of $16,769.52. On February 7, 1935, after audit of the Trustee's final account the al-

---

[2] General Order VIII of the United States Supreme Court's "orders in bankruptcy" provides for service of process on partners in accordance with the Bankruptcy Act. United States Code, Chapter 4, Sec. 41, provides for service of petition in bankruptcy with a writ of subpœna upon the persons therein named, Sec. 18, Act of July 1, 1898, c. 541, 30 Stat. 551; Feb. 5, 1903, c. 487, Sec. 6, 32 Stat. 798.

lowances were made, the trustee discharged and the case was marked "closed". While this estate was being administered, Fred S. Post as an individual, under the creditors' petition, was adjudged a bankrupt on December 19, 1933, and his estate was administered and he was discharged on May 5, 1934. On January 4, 1934, Helen Post Morris, as an individual, *petitioned* for her adjudication and she was adjudged a bankrupt and on June 2, 1934, she was discharged from all debts and claims. Neither Mary Post Williams nor Martha L. Post were ever adjudicated bankrupts.

Martha L. Post, in her lifetime, owned the Luzerne County, Pennsylvania, real estate now in controversy. On December 6, 1933, there was recorded in Luzerne County the above mentioned deed for this real estate, from Martha L. Post to her niece, Rose McCabe Hoover. The consideration recited was $1.00. The bill filed charged that this was a gift; Rose McCabe Hoover's answer denied this and alleged that the consideration was an antecedent and preëxisting indebtedness for money advanced and for board and lodging furnished her after an operation in Baltimore and for three months of every year from 1927 to 1934, and also for taking care of the property. This denial also had testimonial support. Mrs. Post, according to Mrs. Hoover's testimony, "figured" the property "was worth about $5,000."

Martha L. Post died testate in January 1935 in Knox County, Tennessee, and Helen Post Morris was appointed administratrix c. t. a. of the estate. Her estate showed individual debts amounting to $4,834.00 and assets of $6,039.42.

On November 9, 1935, the Reconstruction Finance Corporation, one of the creditors of Post and Company, filed a petition in the former bankruptcy proceedings against the partnership under Section II (8) of the Bankruptcy Act, praying for an order reopening the estate of Post and Company for the purpose of further administration of this real estate alleged to have been fraudu-

lently conveyed by Mrs. Post to Mrs. Hoover. The petition was allowed, the matter was again referred to the Referee, a meeting of creditors again called, a trustee elected, and at this meeting, the referee directed that equity proceedings be instituted. These proceedings were instituted against the Socony-Vacuum Oil Company, a tenant, Henry C. Hoover, and Rose McCabe Hoover, his wife. The basic averments of this bill are quoted earlier in this opinion. There was (as already noted) a specific charge that the conveyance of December 1, 1933, by Martha L. Post to Rose McCabe Hoover was made with the actual intent "to hinder, delay and defraud the then present creditors of . . . Post and Company, bankrupt." [3]

---

[3] Sec. 67(e) of the Bankruptcy Act of 1898 provides as follows: "That *all conveyances*, transfers, assignments, or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition, *with the intent and purpose on his part to hinder delay, or defraud his creditors, or any of them*, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned, or encumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors. And *all conveyances*, transfers, or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the State, Territory, or District in which such property is situate, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt. For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any State court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction." (Italics supplied).

The defendant in her answer called for proof of the membership of Mrs. Post in this partnership, and objected to the proof made by the depositions of Fred S. Post and Helen P. Post. She denied the averments as to Mrs. Post's insolvency and as to the transfer of her property without consideration and to defraud the creditors of Post and Company. She also challenged the Trustee's right to maintain this action, and the jurisdiction of the Bankruptcy Court. Upon hearing on the bill and answer, the court below entered the decree heretofore quoted and this appeal followed.

The pivotal question is whether by virtue of the provisions of Section 5 of the Bankruptcy Act of 1898 (11 U. S. C. A. Sec. 23),[4] *the title* to the separate estate of

---

[4] Since the case here involved was instituted in November 1933, the Bankruptcy Act of 1898, as amended, and not the Chandler Act of 1938, governs this case. Section 5 of the Bankruptcy Act of 1898, as amended, provided as follows: "a. A partnership, during the continuation of the partnership business, or after its dissolution and before the final settlement thereof, may be adjudged a bankrupt. b. The creditors of the partnership shall appoint the trustee; in other respects so far as possible the estate shall be administered as herein provided for other estates. c. The court of bankruptcy which has jurisdiction of one of the partners may have jurisdiction of all the partners and of the administration of the partnership and individual property. d. The trustee shall keep separate accounts of the partnership property and of the property belonging to the individual partners. e. The expenses shall be paid from the partnership property and the individual property in such proportions as the court shall determine. f. The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts. Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be added to the assets of the individual partners in the proportion of their respective interests in the partnership. g. The court may permit the proof of the claim of the partnership estate against the individual estates, and vice versa, and may marshal the assets of the partnership estate and individual estate so as to pre-

an alleged partner *vests in the trustee* upon the filing of an involuntary petition later granted praying for the adjudication as a bankrupt of the partnership alone, where "the petition and subpœna" or other process was never served upon the alleged partner either in the partnership proceedings or in any individual proceedings.

The law is settled that "upon adjudication in bankruptcy all the property of the bankrupt vests in the Trustee as of the date of the filing of the petition": *Taylor v. Sternburg*, 293 U. S. 470, 55 S. Ct. 260, 79 L. ed. 599. But to proceed further in the present case "the bankrupt" must be *identified*. It was Post and Company, and not Martha L. Post, that was "adjudicated a bankrupt". It follows that it was the *partnership* property only and *not* Martha L. Post's property which "vested in the trustee as of the date of the filing of the petition".

Appellee contends that by Section 5 of the Act, the trustee in bankruptcy of a duly adjudged bankrupt partnership becomes vested as of the date when the petition in bankruptcy is filed against the partnership with title to the assets of both the partnership and the individual partners, whether they are adjudicated in bankruptcy or not, or whether they are made parties to the proceedings or not by service of the petition and subpœna or other process. Appellee relies upon *Francis v. McNeal*, 228 U. S. 695, 33 S. Ct. 701, 57 L. ed. 1029 (1913). The deci-

---

vent preferences and secure the equitable distribution of the property of the several estates. h. In the event of one or more but not all the members of a partnership being adjudged bankrupt, the partnership property shall not be administered in bankruptcy, unless by consent of the partner or partners not adjudged bankrupt; but such partner or partners not adjudged bankrupt shall settle the partnership business as expeditiously as its nature will permit, and account for the interest of the partner or partners adjudged bankrupt."

Section 1, dealing with the meaning of words and phrases, provided (subdivision 19) that "persons" shall include corporations, except where otherwise specified, and officers, provided that "any person may, after the expiration of one month and within the next twelve months subsequent to being adjudged a bankrupt, file an application for a discharge."

sion in that case gives seeming but not substantial support to appellee's position. No question such as that presented by this appeal arose in that case. Whether or not the property of a member of a bankrupt partnership *vested* in the trustee as of the date of the filing of the petition was not there an issue. As Justice HOLMES speaking for the court there said: "This is a proceeding to review an order of the Bankruptcy Court to the effect that the separate estate of Stanley Francis *should be turned over for administration to the respondent, Mc-Neal, trustee in bankruptcy* of a firm of which Francis was a member. (Italics supplied) . . . Creditors filed a petition against Latimer, Francis and Marrin, alleging that they were partners trading as the Provident Investment Bureau, and that they were bankrupt individually and as a firm. McNeal was appointed receiver of the partnership and individual estates, but Francis denied that he was a partner and sought to have the receiver discharged." It was later duly adjudicated that Francis was a partner and Justice HOLMES stated "That now stands admitted for the purposes of the present decision." He then pointed out that "it would be an anomaly to allow proceedings in bankruptcy against joint debtors from some of whom, at any time before, pending, or after the proceeding, the debt could be collected in full." He said further: "If, as in the present case, the partnership and individual estates together are not enough to pay the partnership debts, the rational thing to do, and one certainly not forbidden by the act, is to administer both in bankruptcy. . . . If it be said that the logical result of our opinion is that the partners ought to be put into bankruptcy whenever the firm is, as held by the late Judge LOWELL, in an able opinion, *In re Forbes,* 128 Fed. Rep. 137, it is a sufficient answer that no such objection has been taken, but on the contrary, Francis has consented and agreed to hand over his property according to the order of the court. . . ."

In the case before us the petition contained no prayer that Mrs. Post be adjudged a bankrupt individually.

There was no service of the "petition and subpœna" or any other process upon her in the partnership proceedings in bankruptcy, and there were no bankruptcy proceedings instituted against her as an individual. No adjudication of bankruptcy against her was then or at any other time made. The adjudication that the partnership was a bankrupt supports an adjudication that the individuals named as partners were in fact partners only after service of subpœna and due process upon them. Each partner has the right to be heard.[5] If he denies that he is a partner this fact must first be judicially determined before an adjudication which deprives him of his possessions can be made against him as a partner. In *Manson v. Williams, Trustee in Bankruptcy of Hudson Clothing Company*, 213 U. S. 453, 29 S. Ct. 519, 53 L. Ed. 869, the United States Supreme Court held that while an adjudication putting two or more persons into bankruptcy as partners is, for the purpose of administering the property, good as against the world, it does not establish the existence of the partnership except as against parties entitled to be heard, and that question is not *res judicata* as against one who had denied being a partner and had not been heard. *Francis v. McNeal* did not decide that an adjudication of the partnership as a bankrupt was equivalent to an adjudication of the partners as bankrupts.

In *Liberty National Bank v. Bear*, 276 U. S. 215, 48 S. Ct. 252, 254, 255, 72 L. ed. 536, the Trustee contended that the petition filed "was, in effect, a petition against the individual partners, as well as the partnership, and the adjudication was, in effect, an adjudication that the individual partners as well as the partnership were bankrupt; that is, that the adjudication that the partnership was a bankrupt necessarily imported an adjudication that the individual partners were also bankrupts."

---

[5] A partner is not subject to involuntary adjudication who is engaged as a wage earner or chiefly in farming nor is a minor, nor one who is insane, nor one who died prior to the filing of the petition, etc.

The United States Supreme Court negatived this contention, saying through Justice SANFORD: "This contention disregards entirely the principle established by the Bankruptcy Act that a partnership may be adjudged a bankrupt as a separate entity without reference to the bankruptcy of the partners as individuals. . . . We cannot believe that Congress intended to limit and weaken the broad provision of Section 5a permitting a partnership to be adjudged a bankrupt, by making it essential to such an adjudication that the partners should also be adjudged bankrupts individually. So to hold would make it impossible, in an involuntary proceeding, to adjudge bankrupt a partnership as a separate entity, although it was insolvent and had committed an act of bankruptcy, if any of the partners could not be adjudged a bankrupt because he had not committed an individual act of bankruptcy or was a person exempt from such an adjudication, or for any other adequate reason." The Court then adds this: "The conclusion stated is not in conflict with the decision in *Francis v. McNeal*, 228 U. S. 695 [33 S. Ct. 701, 57 L. Ed. 1029, L. R. A. 1915E, 706], upon which the trustee relies. That decision, as we have heretofore pointed out in *Liberty Nat. Bank v. Bear*, supra, 368 [44 S. Ct. 499], and *Meek v. Centre County Banking Co.*, supra, 432, did not involve the question whether an adjudication of the bankruptcy of a partnership involved the adjudication of the bankruptcy of the partners, but merely involved the question whether a bankruptcy court in which an insolvent partnership had been adjudged a bankrupt might under the administrative provisions of section 5 require a partner who had not been adjudged a bankrupt to surrender his individual property to the trustee of the partnership estate for the purpose of paying the partnership debts. There was no claim or suggestion that the adjudication of the bankruptcy of the partnership had involved an adjudication of the bankruptcy of the partner as an individual, or that under that adjudication he could be deemed a bankrupt individually

*or a trustee could be appointed of his individual estate for the purpose of administering it as that of a bankrupt."* (Italics supplied). The last paragraph of that opinion reads as follows: "We conclude that the involuntary petition filed against the Provision Company, which did not in terms seek an adjudication that the Beckers were bankrupts as individuals, nor allege that as individuals they were insolvent or had committed any acts of bankruptcy, was not in legal effect a petition filed against them individually, and the adjudication under that petition that the partnership was a bankrupt, was not in legal effect an adjudication that they were bankrupts individually. There is hence no ground, under either section 67c or section 67f of the Act, for annulling the judgment liens obtained upon their individual real estate more than eight months prior to the filing of their voluntary petitions."

The opinions in these two cited cases show that the United States Supreme Court recognizes the distinction between, on the one hand, requiring a member of a bankrupt partnership to "turn over for administration" his separate estate, to the trustee for the bankrupt partnership so that the partnership debts may be paid (for 'the individual estate after paying private debts is part of those assets [i. e., of the partnership] so far as needed": *Francis v. McNeal,* supra), and, on the other hand, administering the *individual partner's* estate as though *he as well as the partnership* had been *adjudged a bankrupt.* In the former case the title to the *individual* partner's property does *not* vest in the trustee of the duly adjudged bankrupt partnership "as of the date of the filing of the" involuntary bankruptcy "petition" against the partnership. In the latter case the trustee "takes over" the individual partner's property "for administration" but when he does so he takes it "cum onere". Those who acquire rights in the individual partner's property between the date the petition was filed against the partnership and the date of the trustee's "taking over" the in-

dividual partner's property "for administration" *hold* those rights, as the United States Supreme Court decided in *Liberty Nat'l Bank v. Baer*, supra. *First Nat'l Bank of Herkimer v. Poland Union*, 109 Fed. Rep. (2d) 54, 2 C. C. A. (1940), recognized the rule laid down in the case just cited, holding that a trustee of a bankrupt partnership has no power to control claims of creditors against a partner individually. There the court said: "The property of the partner is in many ways the property of the partnership, or at least the property of the trustee. Even this is not completely so, as *Liberty National Bank v. Bear*, 276 U. S. 215, 48 S. Ct. 252, 72 L. Ed. 536, teaches in upholding the acquisition of a judgment lien against a partner's property, notwithstanding the bankruptcy of the partnership within four months thereafter. Cf. also *Myers v. International Trust Co.*, 273 U. S. 380, 383, 47 S. Ct. 372, 71 L. Ed. 692. But the creditor's right to an in personam judgment against the partner is not the property of the partnership, nor is it a right which can be enforced by the partnership trustee. The trustee is given some of the rights of an attaching creditor, but only those rights which are rights against property, in or out of the custody of the court. Bankruptcy Act, section 70, sub. c, 11 U. S. C. A. section 110, sub. c."

In appellee's brief appears the following statement: "Appellee's position is that he, as Trustee in Bankruptcy of Post and Company, acquired title to the real estate in question as of November 27, 1933, the date when the petition against Post and Company was filed; that Martha L. Post thereafter had no title to convey; and that this action is to remove a cloud from plaintiff's title . . . the Appellant has persistently argued that this is a proceedings by the Trustee in Bankruptcy of Post and Company to set aside a fraudulent conveyance and has introduced various arguments as to why such a proceedings cannot be sustained. . . . Appellant argues that the Appellee cannot recover in this action because he has

failed to index the action against the estate of Martha L. Post, now deceased, in the Court of Common Pleas of Luzerne County. In this connection he relies on the cases of *Negley v. Reiser*, 324 Pa. 190, and *Higgins's Estate*, 325 Pa. 106. Again we wish to point out that if this were a proceeding to set aside a fraudulent conveyance the Appellant's contention might be well founded. But such is not the case." Appellee then quotes as follows from the decision of the court below: "Sect. 15A of the Fiduciary Act [of Pennsylvania] . . . can have no application to an instance where there has been a vesting of the title by operation of law in a trustee in bankruptcy as the result of an adjudication in bankruptcy prior to the death of the decedent."

It is vain for appellee to argue that this action "is to remove a cloud from plaintiff's title," for the issues are made by the pleadings and not by the arguments. In the recent case of *Otto, Admx., v. Western Savings Fund Society*, 343 Pa. 615, 23 A.(2) 462, we said: " 'The issues of a case are defined by, and confined to, the pleadings. . . . In determining the issues made in the case, the pleadings, and not the evidence must be looked into. . . .' " The pleadings hereinbefore quoted in this opinion clearly tell us what the issues are.

Appellee bases his case, as the court below based its decision, on the assumption expressed in the sixth conclusion of law of the court below that by operation of law the title to the property in question "vested in the trustee in bankruptcy" on November 27, 1933, the date of the filing of the petition in bankruptcy against the partnership of Post and Company. That conclusion and others based on the same assumption must be adjudged erroneous. This case then becomes (as the Bill of Complaint says it is) one for the setting aside of the deed of December 1, 1933, because it was made (as plaintiff below alleges) "with actual intent . . . to hinder, delay and defraud . . . creditors" of that date. By "creditors" is meant, according to plaintiffs' bill, creditors of Martha

L. Post's "individual estate and particularly the then present creditors of the partnership of Post and Company, bankrupt".[6]

This is *not* an action "to remove a cloud from plaintiff's title" and if it was such an action, plaintiff has *no title* on which a cloud could rest. The title to this property was in Martha L. Post (i. e., Mrs. Frank H. Post, until she conveyed it on December 1, 1933, to her niece, Rose McCabe Hoover, the appellant herein, by deed recorded on December 6, 1933, in Luzerne County Deed Book No. 733 at page 176 et cet.). Plaintiff in asking for relief makes no reference to any "cloud on title", his "prayers" are that the deed just referred to "be declared fraudulent, null and void" and that "the title . . . be declared to be vested in your orator as trustee" (subject to the rights of the tenant) and that "the claim of your orator as such Trustee on behalf of the general creditors of the said partnership of Post and Company, bankrupt, be declared to be a lien on the above described premises."

Appellant challenges the authority of the trustee in bankruptcy of Post and Company to institute this action against the defendant-appellant and in support of the challenge makes the argument contained in this paragraph : The trustee's power is limited to instituting suits to recover property *transferred by the bankrupt,* i. e., by Post and Company, the partnership. (Sec. 70e, as amended, 11 U. S. C. A. 1110e). If the trustee or the creditors of the partnership had wished to challenge the transfer of Mrs. Post's real estate in Luzerne County he should have proceeded in her lifetime to have her adjudged a bankrupt. In *Credito Y Ahorro Ponceno v.*

---

[6] Nowhere does plaintiff's bill refer to Mrs. Post as a bankrupt, for in fact she was never adjudged a bankrupt. When she died on January 7, 1935, there remained out of her estate of $6,039.42 "a balance of $1,305.42 to be turned over to the trustee in bankruptcy of Post and Company and distributed to the unsecured creditors of Post and Company": 27th finding of fact.

*Gorbia,* 25 Fed. Rep. (2d) 817, the Circuit Court of Appeals of the First Circuit, declared: "The legal effect of the filing of the petition against the firm was to avoid preferential transfers of firm property made within four months, and not transfers of the individual properties of the partners. In order to have avoided such transfers as preferential, petitions in bankruptcy should have been filed by or against each of the active partners within four months of the time the transfers were made, if recording was not required, or within four months of the transfers, if recording was required. No petitions in bankruptcy by or against these partners as individuals have been filed." In the above case certiorari was denied by the United States Supreme Court on October 15, 1928, 278 U. S. 613.

In *Railsback v. Snyder,* 285 Fed. Rep. 440, a co-partnership of two individuals was found to be insolvent and thereupon one of the partners, Charles F. Snyder, "in order to place his property beyond the reach of the creditors of the copartnership" conveyed his real estate to one F. R. Daniel. The partnership was then dissolved and the other partner conducted the business for a few months and was then adjudged a bankrupt. The trustee of this bankrupt then filed a bill asking that the dissolution of the partnership be declared null and void, that Charles F. Snyder be declared a bankrupt, and that the conveyance to Daniel be declared null and void as against the creditors of the copartnership. The Court in dismissing the bill said: "To decide this question it is necessary to consider the powers and duties cast upon the trustee by the Bankruptcy Act. Sections 23a, 23b (Comp. St. section 9607), confer jurisdiction upon the United States courts. Section 47 (Comp. St. section 9631) defines the duties of trustees and provides that as to all property in the custody of the bankruptcy court he shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; as to all property not in the cus-

tody of the bankruptcy court he shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied. Section 60 (Comp. St. section 9644) has reference to preferred creditors and prescribes the limit of four months. Section 67e (Comp. St. section 9651) provides that all transfers or incumbrances of his property, made or given by a person adjudged a bankrupt within four months prior to the filing of the petition, if made to hinder, delay, or defraud his creditors, shall be null and void; that the property conveyed by such null and void conveyances, unless exempt, shall remain a part of the assets of the estate. None of these sections purpose to vest the power in the trustee of a bankrupt person to bring an action to accomplish results sought in this suit. The jurisdiction of equity to set aside fraudulent conveyances is too well recognized to need citation, but the circumstances under which such suits can be maintained are equally well defined. The right of a trustee of a bankrupt to maintain a suit to set aside conveyances as a fraud upon the creditors whom he represents must be found in the Bankruptcy Act, and the power and right given in said act does not authorize this suit. The bankrupt is J. D. Howze; the conveyances sought to be vacated were made by Charles F. Snyder. It is for the creditors of Charles F. Snyder to proceed against him, and not the trustee in bankruptcy of J. D. Howze."

It was held in *In re Fackelman,* 248 Fed. 565, 41 A. B. R. 14, that on the death of an insolvent, creditors cannot resort to proceedings in bankruptcy, but are under the necessity of submitting to the jurisdiction and judgment of the Probate Court. There is no express power conferred by the Bankruptcy Act to administer the estate of deceased insolvents. However, "the estate of a deceased partner remains liable for the payment of the firm debts if there is any surplus after payment of the individual debts of the decedent": 1 Collier on Bankruptcy (14 ed.) 300, sec. 507. The law of decedents estates then controls the procedure.

Appellant claims that she is not precluded from challenging the authority of the trustee to bring this suit even though the United States District Court for the Eastern District of Tennessee made an order on November 9, 1935, under Section II(8) of the Bankruptcy Act reopening the estate of Post and Company for the purpose of administering certain properties alleged to have been conveyed fraudulently by Martha L. Post (Mrs. Frank H. Post) as a part of the estate of Post and Company, bankrupt, and that later O. M. Tate, Jr., was elected trustee of the estate of Post and Company, bankrupt, and qualified and the Referee in Bankruptcy then ordered the bringing of this action.

Appellant calls attention to the fact that the court below in the instant case found that " 'there is no evidence . . . that any copy of said petition, or a subpœna, or any notice of said bankruptcy proceedings, was ever served upon said Martha L. Post, individually, or otherwise, in her lifetime,' and not having appeared in said bankruptcy proceedings, no adjudication or judgment entered therein against said firm could or would affect her individual property conveyed to Appellant, although said Appellee-Trustee in instant suit is endeavoring, without having any lien thereon, to pursue said property to pay his alleged debt."

On the phase of this case now being discussed, Justice HOLMES' opinion speaking for the court, in *Chicago Life Ins. Co. v. Cherry*, 244 U. S. 25, 29, is apposite: "A court that renders judgment against a defendant thereby tacitly asserts, if it does not do so expressly, that it has jurisdiction over that defendant. But it must be taken to be established that a court cannot conclude all persons interested by its mere assertion of its own power, *Thompson v. Whitman*, 18 Wall. 457, even where its power depends upon a fact and it finds the fact. *Tilt v. Kelsey*, 207 U. S. 43, 51. A divorce might be held void for want of jurisdiction although the libellee had appeared in the cause. *Andrews v. Andrews*, 188 U. S. 14,

16, 17, 38. There is no doubt of the general proposition that in a suit upon a judgment the jurisdiction of the court rendering it over the person of the defendant may be inquired into. *National Exchange Bank v. Wiley,* 195 U. S. 257; *Haddock v. Haddock,* 201 U. S. 562, 573." In *Adam v. Saenger,* 303 U. S. 59, 62, the United States Supreme Court, speaking through Chief Justice STONE said: "When the matter of fact or law on which jurisdiction depends was not litigated in the original suit it is a matter to be adjudicated in the suit founded upon the judgment."

Conceding that the trustee had the right *to institute* a suit to recover the debt claimed he possessed no greater right *in respect to this property* than any other unsecured general creditor of Martha L. Post. When real estate is fraudulently conveyed, the title remains from the standpoint of the defrauded creditors in the *grantor,* and the latter's creditors must in order to vindicate their claims comply with the requirements of the applicable statute. If the debtor dies, the creditor by virtue of Sec. 15a of the Fiduciaries Act of 1917, P. L. 447, as amended by the Act of June 7, 1919, P. L. 412, has a lien upon the land for the period of one year. To continue this lien the creditor must begin his action for the recovery of the debt against the executor or administrator within one year of the debtor's death and any action so brought "shall be indexed, within said period, against the decedent and such executor or administrator, in the judgment index in the county in which such action is brought, and also in the county in which the real estate sought to be charged is situate, and be duly prosecuted to judgment; and then to be a lien only for the period of five years, unless the same be revived by writ of scire facias against the decedent, his heirs, executors, or administrators, and the devisee, alienee, or owner of the land sought to be charged, in the manner now provided in the case of the revival of judgments." In *Tourisons's Est.,* 321 Pa. 299, 302, 184 A. 95, we said: "To success-

fully continue the lien of an ordinary debt against the decedent's estate there must be both the commencement of an action and its indexing by the prothonotary." In the instant case it is conceded by the appellee and so found by the court below that the above statutory requirements were not complied with.

In *Central-Penn National Bank of Philadelphia v. Culp et al.,* 320 Pa. 358, 182 A. 239, this court held that a general creditor who fails to continue the lien of his claim against the land of the decedent by complying with the statutory requirements above set forth under the Acts of 1917 and 1919, supra, may not thereafter proceed against the land of the decedent and this is so although it is alleged that the decedent fraudulently conveyed the land to another during his lifetime. We there said: "Had decedent retained the property in question and died possessed thereof, it is clear that plaintiff would not now have any power to realize therefrom. Its failure to comply with the statute would be fatal to successful prosecution of its claim. The question is not whether the death of the grantor cut down plaintiff's rights and remedies against the land, but whether the fact that the debtor had conveyed her property inter vivos can vest in plaintiff rights in respect to that land which admittedly it would not have if suit in assumpsit, properly indexed and prosecuted to judgment, followed by sale of the land to pay the indebtedness, is no longer available. To hold that it may now proceed by bill in equity to accomplish the same result would be to defeat the purposes of section 15a above cited. That section and the prior acts of assembly on the subject are statutes of repose and not merely of limitation: (citing cases) . . . A creditor's rights against real estate alleged to have been fraudulently conveyed by a debtor-decedent in the latter's lifetime can certainly rise no higher than his rights against any realty of which the debtor might have died possessed."

Our conclusions are that since Martha L. Post was never adjudged a bankrupt, her title to the property in

question did not on November 27, 1933, or at any other time vest in the trustee in bankruptcy of the partnership trading as Post and Company upon that partnership being adjudicated on December 19, 1933, a bankrupt in response to a petition in bankruptcy filed against it on November 27, 1933; that the trustee in bankruptcy of Post and Company possessed as against the property in controversy no rights other than those possessed by any general creditor of Martha L. Post and that having lost for the reasons hereinbefore stated any lien he as such creditor may have had against that property he had no right to proceed by bill in equity to accomplish the result he could have accomplished by a timely suit in assumpsit in the proper forum, duly indexed and prosecuted to judgment and followed by a sale of the land to satisfy that judgment. A suitor's failure to avail himself of a remedy once but no longer available to him in a court of law does not entitle him to successful recourse to a court of equity. The right appellee forfeited in the one forum must be denied him here.

The decree is reversed at the cost of the appellee.