## Keating v. Craig

*Robert L. Goehring*, for plaintiff.

*Harry J. Schmitt*, for defendant.

*Dale Cleland*, for intervenor.

*D. Malcolm Anderson*, United States Attorney, and *Thomas J. Shannon*, Assistant United States Attorney, for the United States.

SOFFEL, J., November 14, 1957.—This matter is before the court on exceptions to the special return of the sheriff. The material facts are matters of record and are not in dispute. Chronologically, they are as follows:

1. Title to the property sold at the execution sale was acquired by Robinson W. Craig and Robert E. Smith by deed dated February 2, 1955, and of record in the recorder's office of Allegheny County in Deed Book vol. 3358, p. 471.

2. Part of the consideration for said conveyance was a bond and purchase-money mortgage recorded in the recorder's office of Allegheny County in Mortgage Book vol. 3568, p. 51, in favor of Alphonse J. Keating and Katherine H. Keating, his wife, execution-creditors herein.

3. Robinson W. Craig and Robert E. Smith conveyed the property to themselves and their respective wives, Marion O. Craig and Helen Smith, by deed dated June

13, 1955, and of record in said recorder's office in Deed Book vol. 3391, p. 611.

4. On April 27, 1955, Robinson W. Craig, individually and trading as Derek Company, executed and delivered a note to Proie Bros., Inc., for $468.

5. On September 17, 1955, judgment was entered in the prothonotary's office of Allegheny County at DSB no. 3330, October term, 1955, on said note in favor of Proie Bros., Inc., against Robinson W. Craig, individually and trading as Derek Company.

6. According to the "List of Judgments" attached to the sheriff's return, the United States of America filed liens for withholding and employment taxes against Robinson W. Craig and Derek Company on October 28, 1955, and November 26, 1955, in the amounts of $1,241.49 and $1,714.06 respectively.

7. On December 2, 1955, Higgins Lumber Company, exceptant herein, obtained a note for $3,500 executed and delivered by Robinson W. Craig, Marion O. Craig, Robert E. Smith and Helen O'Connor Smith.

8. On February 23, 1956, judgment was entered on the bond in favor of the mortgagees at DSB no. 2234, April term, 1956.

9. Higgins Lumber Company caused judgment to be entered on its note in the prothonotary's office on February 29, 1956, at DSB no. 2482, April term, 1956, against Robinson W. Craig, Marion O. Craig, Robert E. Smith and Helen O'Connor Smith.

10. On February 29, 1956, the mortgagees filed a praecipe for writ of fieri facias at fi. fa. no. 435, April term, 1956.

11. The property was sold by the sheriff on April 2, 1956, for $13,125.

12. The balance of the proceeds after payment of costs, taxes and mortgage indebtedness is $2,432.83. The distribution of this sum of money is the matter in controversy.

13. As to the fund in issue, the sheriff's return reads as follows:

"To balance of proceeds, distribution of same withheld awaiting an Order of Court to adjudge the "priority' of the within Federal Lien or liens over the judgment DSB 3330 Oct. 1955 herein."

14. On April 30, 1956, Higgins Lumber Company filed exceptions to the sheriff's special return, expressly taking exception to the portion of the return above quoted.

15. The United States of America, on October 5, 1956, filed a complaint in the United States District Court for the Western District of Pennsylvania, civil action no. 15072, under title 28 U. S. C. A., sec. 1345, against Robinson W. Craig and Marion O. Craig, his wife, and Robert E. Smith and Helen Smith, his wife, seeking to have the deed of June 13, 1955, set aside as a fraudulent conveyance.

16. On October 9, 1956, the complaint was amended to join Higgins Lumber Company as a party defendant.

17. On October 25, 1956, Proie Bros., Inc., intervened and filed a complaint alleging that it was a prior judgment creditor to the United States of America.

18. In the said civil action no. 15072, a judgment by default was entered on February 11, 1957, against defendants in said action which decreed that the premises referred to therein were an asset of a partnership between Robinson W. Craig and Robert E. Smith at the time of the conveyance by them to themselves and their wives as tenants by the entireties and that at the time of the transfer, the partnership was insolvent and the transfer was made in fraud of the Government of the United States and other partnership creditors. The court further ordered that the

liens of Proie Bros., Inc., and the United States of America were valid and subsisting.

19. The Federal Government concedes that its claim is subordinate to that of Proie Bros., Inc.

The question before the court is one of law and may be thus stated:

*Who is entitled to the fund now in the hands of the Sheriff, Proie Bros., Inc., and the United States of America or Higgins Lumber Company?*

From June 13, 1955, to April 2, 1956, the date of the sheriff's sale, record title to the property in question continuously remained in Robinson W. Craig and Marion O. Craig, his wife, and Robert E. Smith and Helen Smith, his wife. This created a tenancy in common as between the two married couples, each couple holding its undivided one-half interest as tenants by the entireties: Heatter v. Lucas, 367 Pa. 296, 80 A. 2d 746 (1951); Wally v. Lehr, 2 D. & C. 2d 722 (1954).

During the period the property was thus held the judgment of Proie Bros., Inc., against Robinson W. Craig, individually and trading as Derek Company, the Federal tax liens against Robinson W. Craig, individually and trading as Derek Company, and the judgment of Higgins Lumber Company against Robinson W. Craig, Marion O. Craig, Robert E. Smith and Helen Smith were entered in the prothonotary's office of the Common Pleas Court of Allegheny County in the order stated.

As far as the record is concerned, the Higgins Lumber Company judgment was the only lien attached to the realty as of the date of the sale. It is fundamental that a lien against one spouse only does not attach to realty held by husband and wife as tenants by the entireties. As stated by the court in Beihl v. Martin, 236 Pa. 519, 85 Atl. 953 (1912), at 528:

"The owner of such lien must hold it subject to its possible extinction in either of two events, the prede-

cease of the husband (debtor-spouse), or the alienation of the estate by the joint act of the parties. The efficiency of the lien depends upon the nonhappening of either."

Thus, considering only the record at the time of the sale, since the liens of Proie Bros., Inc., and the United States Government were not enforceable against the property sold at sheriff sale, they are not entitled to participate in the balance of the proceeds derived from the sale on a mortgage.

This question then arises:

Does the default judgment entered by the Federal district court at civil action no. 15072 give Proie Bros., Inc., and the United States Government priority over Higgins Lumber Company to the fund in question?

We are of the opinion that the United States district court does not have jurisdiction to determine distribution of this fund. This matter is within the exclusive jurisdiction of the Court of Common Pleas of Allegheny County and any claim upon the fund would have to be passed upon by this court. This matter is governed by the Act of June 16, 1836, P. L. 755, sec. 86, 12 PS §2661, which reads as follows:

"In all cases of sale upon execution, as aforesaid, where there shall be disputes concerning the distribution of money arising therefrom, the court from which the execution shall have issued shall have power, after reasonable notice given, either personally, or by advertisement, to hear and determine the same, according to law and equity."

The order by the United States district court does not in any manner determine the rights as between the parties to the fund. The order originally contained the following:

". . . and that if the Court of Common Pleas of Allegheny County award any of the said money in the hands of the Sheriff to Higgins Lumber Company,

that said Higgins Lumber Company shall hold such funds in trust for Proie Bros. Inc. and United States of America."

Higgins Lumber Company filed a motion to set aside the judgment taken by default. Upon stipulation of the parties the portion of the order above quoted was stricken and the motion to set aside the judgment was dismissed by the United States district court. Thus the extent of the order was to hold that the transfer made on June 13, 1955, was a fraudulent conveyance. However, there was no evidence that Higgins Lumber Company was a party to this fraud.

Assuming the transfer made on June 13, 1955, was a fraudulent conveyance, does that change the rights of the parties?

Section 9 of the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, sec. 9, 39 PS §359, provides:

"(1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such purchaser:

"(a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim; or

"(b) Disregard the conveyance, and attach or levy execution upon the property conveyed."

The fact that a conveyance was fraudulent does not make the transaction or title in the transferee void; it is voidable. As stated by the court in Tate v. Hoover, 345 Pa. 19, 38, 26 A. 2d 665 (1942), cert. den. 317 U. S. 677:

"When real estate is fraudulently conveyed, the title remains from the standpoint of the defrauded

creditors in the *grantor*, and the latter's creditors must in order to vindicate their claims comply with the requirements of the applicable statute."

Proie Bros., Inc., or the United States Government could have brought a bill in equity to have the conveyance set aside or could have levied execution upon the property to test the validity of the transfer prior to April 2, 1956, the date of the execution sale, prior to February 29, 1956, the date of entry of Higgins Lumber Company's judgment or prior to December 2, 1955, the date Higgins Lumber Company received the note executed by all four record title holders. This was not done. Thus, at the time of the execution sale neither Proie Bros., Inc., nor the United States had exercised any of the available remedies to perfect its lien.

In the meanwhile, Higgins Lumber Company had relied upon the record and with all due diligence perfected a lien against the property which, according to the record, was subordinate only to the purchase-money mortgage.

If there was fraud in the making of the deed of June 13, 1955, nowhere is it even intimated that the Higgins Lumber Company was a party to that fraud. There was nothing on the record to give notice that the deed was fraudulent as to the rights of creditors. If either Proie Bros., Inc., or United States of America had instituted proceedings against the property promptly after entering judgment and prior to entry of the Higgins Lumber Company judgment, Higgins Lumber Company would have had notice of the prior claim by lis pendens and the case would be different.

Even though a conveyance is fraudulent as to creditors, such creditors cannot prevail as against a purchaser for fair consideration without knowledge of the fraud at the time of the purchase. A subsequent lien creditor of the transferee may be con-

sidered such a purchaser as to whom the conveyance is valid. This was decided by the court in City of New York v. Johnson, 137 F. 2d 163 (2nd Cir., 1943). Augustus Hand, Circuit Judge, stated, at 165:

"It was said by Judge Lowell in Re Mullen, D. C. 101 F. 413, 416, 417, that: '. . . it has been generally held in the United States that, where property conveyed in fraud of creditors is first attached by creditors of the transferee who have no knowledge of the fraud, their attachment will prevail as against the rights of defrauded creditors of the transferror. Parker v. Freeman, 2 Tenn. Ch. 612; Applegate v. Applegate, [107] Iowa [312], 78 N. W. 34, 38; Shallcross v. Deats, 43 N. J. L. 177. That this is so in Massachusetts is clear. Gibbs v. Chase, 10 Mass. 125.'

"See, also, Sampsell v. Imperial Paper Corp., 313 U. S. 215, 220, 61 S. Ct. 904, 85 L. Ed. 1293; Glenn on Fraudulent Conveyances, §238, where the foregoing doctrine is repeated. We can see no reason to suppose that the New York statutes relating to fraudulent conveyances, which are now embodied in the Uniform Act, in any way vary the rule as to rights of creditors of a fraudulent transferee as they have generally been interpreted by the American courts."

The proceeding instituted at civil action no. 15072 in the United States district court came too late to affect the rights of the parties herein to the distribution of the fund. It is well established that the rights of the parties in a fund realized by sheriff's sale are fixed by the record as it stood at the time of the sale.

As early as 1864 it was said in the case of Douglass' Appeal, 48 Pa. 223, 224 (1864):

"In the distribution of the proceeds of a sheriff's sale, the rights of those claiming to participate are to be determined as they were at the time the sale was made. Such a sale divests whatever liens are upon the lands at the time and the lien-holders are turned

over to the proceeds. No lien upon the fund, and consequently no right to participate in its distribution, can be acquired afterwards. These are familiar principles, and they are applicable to this case."

It is our considered judgment that neither Proie Bros., Inc., nor the United States of America had an enforceable lien against the property at the time of the execution sale. The exceptions of Higgins Lumber Company, therefore, will be sustained and the sheriff of Allegheny County is directed to pay the fund in his hands to Higgins Lumber Company, exceptant herein.